**Abraham ABBARIAO, Appellant,**

**v.**

**HAMLINE UNIVERSITY SCHOOL OF LAW, et al., Respondents.**

**No. 46879.**

Supreme Court of Minnesota.

Aug. 26, 1977.

---

Daniel Zeddies, Jr. and William Starr, Minneapolis, for appellant.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Craig W. Gagnon and Thomas W. Anderson, St. Paul, for respondents.

Heard before SHERAN, C. J., and RO-GOSHESKE, and MacLAUGHLIN, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Plaintiff, Abraham Abbariao, appeals from an order of the district court dismissing his complaint for failure to state a claim upon which relief can be granted and denying his motion for a temporary injunction enjoining his expulsion from defendant law school. We affirm in part and reverse in part.

Plaintiff would have been a third-year student in his final semester at Hamline University School of Law (Hamline) had he not received notice of expulsion for poor grades in February 1976. He was a member of the original class of Midwestern School of Law in 1973. Midwestern School of Law affiliated with Hamline University and in the fall of 1975 became the Hamline University School of Law.

Plaintiff was expelled for failure to maintain a minimum grade point average. After his first year, his grade point average was 73.62 (70 equaled passing). Plaintiff's second-year grade point average was 66.19, for a cumulative average of 69.91. At that time Hamline converted from a "100 point" to a "4.0" grading system. Plaintiff's cumulative average under the new system was 1.99. His summer 1975 semester grades (0.4) lowered his cumulative average to 1.84. His average for courses taken in the fall semester of his final year was 1.55, lowering his cumulative average to 1.79. Hamline required a student to maintain a 2.0 grade point average to remain in school.

Plaintiff does not question the validity of the minimum grade requirement, but instead argues that the manner in which it was applied to him was unfair and in violation of his contractual relationship with the school. Specifically, he alleged that Hamline (1) failed to maintain a consistent grading system and arbitrarily altered one of his grades; (2) failed to inform him of many of his grades until October 1975 despite his requests; (3) failed to notify him of probationary status until December 19, 1975, 4 weeks before final examinations for the fall 1975 semester; (4) singled out his fall 1975 semester examinations for special consideration and otherwise discriminated against him in determining his grades; (5) failed to provide him an opportunity to remedy his deficient work and provide tutorial seminars as described in the original school bulletin; and (6) expelled him without conducting a hearing.

Plaintiff commenced the instant action on March 19, 1976, seeking an injunction reinstating him in law school until Hamline provided him an opportunity to contest the grounds given for expulsion and to remedy his academic deficiencies. After a temporary restraining order was dissolved by consent of the parties, the district court dismissed plaintiff's complaint for failure to state a claim and denied his 'motion for a temporary injunction.

This appeal presents three issues:

(1) Did Hamline's expulsion of plaintiff violate due process as guaranteed by the Fourteenth Amendment to the United States Constitution?

(2) Did Hamline's expulsion of plaintiff violate a common-law duty of fair treatment?

(3) Did Hamline's failure to provide tutorial seminars for plaintiff constitute a breach of their contractual relationship?

Plaintiff contends that his expulsion by Hamline violated procedural due process as guaranteed by the Federal Constitution. Since the Fourteenth Amendment prohibits "any state [from] depriv[ing] any person of life, liberty, or property without due process of law", conduct violates the amendment only if it is attributable to the state, i. e., state action. *E. g., Campbell v. St. Mary's Hospital,* Minn., 252 N.W.2d 581 (1977). The district court did not discuss in its memorandum the issue of state action, but instead determined that the treatment accorded plaintiff comported with constitutional guarantees.

■ Defendants argue that state action is not present. Plaintiff alleged:

"On information and belief, that Defendant Hamline University School of Law, as a duly qualified Minnesota non-profit corporation and educational institution, receives substantial financial support in the form of direct grants and guaranteed student loans, is exempt from ad valorem and other taxes, and otherwise enjoys substantial subsidy, support, and protection by the governments of the United States and the State of Minnesota. That said defendant enjoys such support and protection by reason of its undertaking to perform the essentially governmental function of providing professional education to the public. That by reason of same, and other substantial involvement of said defendant with said governments, action taken by said defendant with respect to plaintiff is action taken under color of federal and state law."

Defendants urge that case law has established that these allegations provide no basis for attributing Hamline's actions to the government.[1] In light of this case law, we agree that it is unlikely plaintiff can link Hamline's actions to the state, but the procedural posture of the case prevents this unlikelihood from being dispositive. Plaintiff's complaint was dismissed for failure to state a claim. In this situation, the allegations contained in the complaint must be accepted as true and viewed most favorably to plaintiff. *Northern States Power Co. v. Franklin,* 265 Minn. 391, 122 N.W.2d 26 (1963). Given the nebulous character of state action,[2] we think it would have been improper to dismiss plaintiff's constitutional claim at this stage of the proceedings. See, *Weise v. Syracuse University,* 522 F.2d 397, 407 (2 Cir. 1975). Since the complaint

---

1. See, *e. g., Grafton v. Brooklyn Law School,* 478 F.2d 1137 (2 Cir. 1973); *Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7 Cir. 1975), certiorari denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976); *Krohn v. Harvard Law School,* 552 F.2d 21 (1 Cir. 1977); *Spark v. Catholic University,* 167 U.S.App.D.C. 56, 510 F.2d 1277 (1975); *Greenya v. George Washington University,* 167 U.S.App.D.C. 379, 512 F.2d 556, certiorari denied, 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975); *Powe v.*

*Miles,* 407 F.2d 73 (2 Cir. 1968); *Grossner v. Trustees of Columbia University,* 287 F.Supp. 535 (S.D.N.Y.1968).

2. The United States Supreme Court has noted: "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45, 50 (1961).

sufficiently alleged state action, we must assume its existence.

■ The cases involving public universities demonstrate that a student's interest in attending a university is a property right protected by the due process clause. *E. g., Dixon v. Alabama State Bd. of Educ.,* 294 F.2d 150 (5 Cir.), certiorari denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). Accord, *Gaspar v. Bruton,* 513 F.2d 843, 850 (10 Cir. 1975). The question then concerns the procedural protections that are to be afforded plaintiff. Determination of the process due necessitates a balancing of the interests and needs of the student against the interests and resources of the university. See, *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

■ Courts have invoked different protections for disciplinary and academic expulsions. Expulsion for misconduct triggers a panoply of safeguards designed to ensure the fairness of factfinding by the university. See, *Dixon v. Alabama State Bd. of Educ.,* 294 F.2d 150 (5 Cir.), certiorari denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). But when a student is expelled for academic deficiencies, these protections are less appropriate. An adjudicative hearing will not determine whether a student's educational performance was unsatisfactory. That issue would be resolved only by regrading the student's examinations, which is a professor's and not a judge's function. Nevertheless, if a student's expulsion results from the arbitrary, capricious, or bad-faith actions of university officials, the judiciary will intervene and direct the university to treat the student fairly. *Mahavongsanan v. Hall,* 529 F.2d 448 (5 Cir. 1976); *Gaspar v. Bruton,* 513 F.2d 843 (10 Cir. 1975); *Greenhill v. Bailey,* 519 F.2d 5 (8 Cir. 1975); *Depperman v. University of Kentucky,* 371 F.Supp. 73 (E.D.Ky.1974); *Brookins v. Bonnell,* 362 F.Supp. 379 (E.D. Pa.1973); *Connelly v. University of Vermont & State Agricultural College,* 244

F.Supp. 156 (D.Vt.1965); *Barnard v. Shelburne,* 216 Mass. 19, 102 N.E. 1095 (1913); Note, 81 Harv.L.Rev. 1045, 1139.

■ In the instant case, plaintiff was expelled because his cumulative grade point average was below 2.0. But he alleged that his examinations for the fall 1975 semester were singularly graded:

"That plaintiff has received information believed by him to be true that his examinations in courses taken by him during the Fall, 1975, semester were singled out for special consideration and grading by his professors as the examinations of a 'probationary student' at the direction of defendants and that defendants have otherwise discriminated against him and applied unequal standards without justification in determining his grades."

The import of these allegations is arbitrary and capricious conduct by Hamline officials. As such, they state a claim for relief and the district court erred in holding to the contrary. Plaintiff is entitled to substantiate these and other allegations of arbitrary conduct.

Plaintiff alternatively cites a common-law duty on the part of the law school not to expel students in an arbitrary manner.[3] In *Gleason v. University of Minnesota,* 104 Minn. 359, 116 N.W. 650 (1908), we held that a university may not arbitrarily expel a student. A law student had been dropped, per resolution of the executive committee of the Board of Regents, for deficiency in his work and charged with certain insubordinate acts towards the faculty. He alleged that the resolution was adopted, without notice to him and without providing him a hearing, at an ex parte meeting where no evidence was taken, that the action resulted from prejudice and personal feeling toward him, and that he had not violated any university rules. The district court overruled a demurrer to the student's petition for a writ of mandamus ordering his reinstatement, and on appeal by

---

**3.** Note, 84 Yale L.J. 120, advances one theoretical basis for the duty, analogizing a university to a private association which at common law could not expel a member if its action lacked procedural safeguards, was ultra vires, or in bad faith. *E. g., Peters v. Minnesota Dept. of Ladies of Grand Army of Republic, Inc.,* 239 Minn. 133, 58 N.W.2d 58 (1953).

the university, we affirmed. Defendants attempt to distinguish the *Gleason* decision by suggesting that the university treated Gleason more arbitrarily than Hamline treated plaintiff. The difference goes to satisfaction of the university's duty, not to its existence.

The requirements imposed by the common law on private universities parallel those imposed by the due process clause on public universities. We need not delineate them here other than to state that academic deficiencies per se are not subject to judicial review. Plaintiff alleged, inter alia, that his expulsion was precipitated by a discriminatory grading procedure. As such, the complaint charges arbitrary conduct to Hamline officials and states a claim for which relief may be granted.[4]

The claim of common-law and constitutional protection is both novel and potentially far-reaching in its implication, prompting our reversal of its summary disposition. All that we decide at this point is that the complaint properly alleges plaintiff's claims that the termination of his student status constituted state action and resulted from arbitrary conduct of Hamline officials. Although the complaint's general averments of state action are sufficient, we emphasize that we do not, by permitting the case to proceed, imply that if the specific allegations of the complaint are proved, a finding of state action is compelled. We again caution that judicial examination into issues of academic performance may well be different from cases involving expulsion for alleged misconduct not directly related to academic proficiency.

Plaintiff also alleged that he entered what was then Midwestern School of Law in reliance on representations in the school bulletin concerning tutorial seminars for students receiving less than passing grades.[5] He contends that the failure to provide tutorial seminars was a breach of contract by the law school.

Elements of the law of contracts have been applied to the student-university relationship, but rigid importation of contractual doctrine has been rejected. *E. g., Slaughter v. Brigham Young University,* 514 F.2d 622 (10 Cir.), certiorari denied, 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 131 (1975); *Mahavongsanan v. Hall,* 529 F.2d 448 (5 Cir. 1976). See, Note, 81 Harv.L.Rev. 1045, 1145; Note, 84 Yale L.J. 120, 138, 143. Plaintiff's insistence on a tutorial seminar, promised some 3 years before when the law school first began and when it was not

---

4. We do not pass on plaintiff's request for a temporary injunction. The district court, which did not reach the question because of its dismissal of plaintiff's complaint, is in a better position to evaluate the propriety of injunctive relief.

5. The bulletin stated: "Any student who obtains a grade of D in any course will be put on notice of an academic probation and will be advised to register for a tutorial seminar during the summer quarter to evaluate his or her past performance in this course and to correct any academic deficiency. A student in this category may be able thereby to increase his grade, but only up to a 70(C). The student will not receive additional academic credits for a tutorial. No student shall be permitted to remain in school in good standing without at least a C average. Any student who received an N in any given course will be required to attend and participate in a tutorial seminar in that subject area. Successful corrective action in that seminar will result in only a passing grade (D) in that course. No student shall be permitted any more than two N grades during an academic year.

"The purpose of this grading system is to maintain a constant check not only on student performance, but on faculty performance. The system is designed to maintain a student in law school without any sacrifice in academic standards. The tutorial seminar course is aimed at corrective action only in cases where a student, except for one course, is clearly qualified to remain in school. Any student being asked to withdraw from the school for academic reasons will then have explored every possibility of error and will then have had every chance to take corrective action in the academic area. This grading system also prevents any one grade from terminating the student's academic career. The students' investment in time and effort is valuable not only to the student but to the institution. It is the aim of this grading system to make sure that the investment pays off for both. Like any law school, we anticipate a significant number of withdrawals in the early part of the academic career. The objective is to make such withdrawals and invitations to withdraw, should that become necessary, a well considered decision by all parties."

affiliated with Hamline, likely should be regarded as interfering beyond an acceptable degree in Hamline's discretion to manage its affairs.[6] But even on a strict contractual basis, Hamline was not obliged to provide tutorial seminars. The bulletin noted that "[a]ll provisions within this bulletin are subject to change without notice." See, *Robinson v. University of Miami,* 100 So.2d 442 (Fla.App.), certiorari denied, 104 So.2d 595 (Fla.1958). Moreover, a strict view of the parties' relationship would require a conclusion that a new contract was formed each time plaintiff paid his tuition each semester. The provision cited by plaintiff thus would not be part of the relevant contract. We therefore affirm the district court's order dismissing the complaint in so far as it concerns plaintiff's contractual claim.

Affirmed in part and reversed in part.

OTIS and ROGOSHESKE, JJ., took no part in the consideration or decision of this case.

---

6. At oral argument below, plaintiff conceded the tutorial program had been abandoned by the school in 1975.