**Craig SHUMAN, et al., Appellants,**

v.

**UNIVERSITY OF MINNESOTA LAW SCHOOL, et al., Respondents.**

**No. C7–89–1383.**

Court of Appeals of Minnesota.

Feb. 6, 1990.

Review Denied March 16, 1990.

Steve G. Heikens, Minneapolis, for appellants.

Thomas W. Tinkham and William R. Stoeri, Dorsey & Whitney, Minneapolis, for respondents.

Considered and decided by KLAPHAKE, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Former University of Minnesota Law School students appeal from summary judgment dismissing their claims of violation of due process and breach of contract arising from law school discipline for honor code violations. We affirm.

## FACTS

Appellants Craig Shuman and Joseph Shasky were close friends in college and had arranged to be in the same section the first year they attended Respondent University of Minnesota Law School. They were in a first year contracts class together.

The contracts class professor assigned a research memorandum due on September 20, 1985. Shuman and Shasky submitted virtually identical papers. The professor thought they had violated the law school honor code, but chose to overlook the violations. He told the students they each must do their own writing in the future. A second research paper was assigned in October. It came to the professor's attention two nearly identical papers had been submitted by Shuman and Shasky.

The organization of the papers was parallel, and parts of both papers were identical or virtually identical. On page 1 of the paper, one student wrote:

> Ruth and Paul Benkowski has retained us in connection with a complaint filed against them alleging (inter alia), intentional interruption of water supply, tortuous [sic] mental anguish, gross inconvenience, and deliberate and malicious intent to cause harm. In this memorandum I consider the likelihood of successfully defending this law suit for the Benkowskis based on the applicable Minnesota law.

The other student wrote:

> The Benkowskis have retained us in connection with a complaint, filed by the Whites, alleging, among other things, intentional interruption of water supply (breach of contract), tortuous [sic] mental anguish, gross inconvenience, and intent to cause harm. In this memorandum, I consider the likelihood of successfully defending this suit based on applicable Minnesota law.

Substantial portions of the papers also read identically. Furthermore, three identical citation dates were handwritten in each paper after it was typed. Additionally, the papers contained identical misspellings, such as "tortuous" and "ammend." An offer of settlement form attached to each of the papers was also identical, even as to a typographical error and a misspelling of the professor's name.

The professor told Shuman and Shasky he was referring the matter for disciplinary

proceedings. The professor contacted the Law School Council, which is composed of students and which administers the honor code. The council appointed a second year student as the honor code investigator. The student investigator interviewed the professor and third year students who were Shuman and Shasky's legal writing teachers and also met with their attorney. The student investigator decided to make a finding of no probable cause.

The student investigator met with the council and gave an oral report of no probable cause. He did not have a written report or the students' papers with him. Sometime in late November or early December 1985, the council voted to uphold the student investigator's finding of no probable cause. At that time, the council had his written report but not the students' papers.

As fall examinations approached, Shuman and Shasky petitioned the dean for permission to honorably withdraw from school with guaranteed readmission. On November 26, 1985, the dean met with the faculty about the request. Prior to the meeting, the professor wrote a memorandum to the faculty opposing the students' petition and expressing his opinion Shuman and Shasky had violated the honor code. The students' names were not used. The faculty discussed the memorandum and voted to deny the students' request.

On December 5, 1985, the faculty revoked the honor code and imposed a new honor code for fall examinations. The new honor code took enforcement power from the student body and gave it to the faculty.

The council, upset about the new honor code, had a meeting with a faculty committee. The faculty committee reinstated the old honor code. A new investigator, a member of the faculty, was appointed by the council. The honor code provided the investigator could be a student "or other qualified person."

The faculty investigator did his own investigation. The council met in January of 1986 to consider whether the proceedings against Shuman and Shasky should be reopened. The focus was on the following section of honor code clause 4.03(1):

The Honor Code Investigator shall promptly report the finding of the presence or absence of probable cause and the factual basis for the finding to the Law School Council, while preserving the anonymity of the accused. The Law School Council may on its own motion overrule the Honor Code Investigator's finding only if it determines that the finding is clearly erroneous on the basis of the report submitted. It shall take a majority of the Law School Council to reverse the Honor Code Investigator's finding of the presence or absence of probable cause. *In the absence of action by the Law School Council, the Honor Code Investigator's finding of the presence or absence of probable cause shall be final.*

(Emphasis added.)

The faculty investigator argued clause 4.03(1) means finality is premised only upon inaction of the council. There was extensive debate. Shuman and Shasky and their counsel were present and participated in the discussion. By a vote of 8 to 1, the council decided to reopen the investigation.

The faculty investigator presented his investigation results and gave the council copies of the students' papers. The council voted 8 to 0 to uphold the faculty investigator's finding of probable cause, and on January 13, 1986, the faculty investigator drafted an honor code complaint against Shuman and Shasky.

The complaint was to be heard by the Honor Code Review Board (composed of three students). Shuman and Shasky brought a motion to dismiss to the review board on the ground the council could not reopen the investigation. By a vote of 2 to 1, the review board granted the motion, and dismissed the case.

The faculty investigator appealed to the Law School Grievance Committee, made up of four faculty and three student members. On March 20, 1987, the grievance committee reversed the review board, and remanded the case to the review board for a hearing on the merits. The vote was 4 to 3.

Two faculty members voted to reverse and two voted to affirm. The student members voted 2 to 1 for reversal. The grievance committee interpreted clause 4.03(1) to mean there was finality only if the council took no action on the investigator's recommendation on probable cause.

Shuman and Shasky filed this lawsuit and sought a restraining order to stop the hearing. The trial court denied the motion on May 12, 1987.

The review board hearing was held May 13–14, 1987. Shuman and Shasky were represented by counsel and were able to call and cross-examine witnesses. On June 17, 1987, the review board found Shuman and Shasky guilty of violating the honor code and they were suspended from school for one year. The grievance committee affirmed. This court was advised at oral argument an appeal by Shuman and Shasky to the faculty was decided adversely to the students.

Neither Shuman nor Shasky is now attending the law school. Shasky, who was on academic probation, took a leave of absence from the spring 1987 school term and, in the summer of 1987, was granted a second leave of absence. Shasky did not return after the second leave. Shuman stayed in school during 1986–1987 and was dismissed by the school because of poor academic performance. Neither Shuman nor Shasky is eligible to return to the law school.

The trial court granted the law school's motion for summary judgment of dismissal, and judgment was entered on May 3, 1989. This appeal is from that judgment.

## ISSUES

1. Did the trial court err in dismissing the claims made by Shuman and Shasky of denial of due process?

2. Did the trial court err in dismissing the claims made by Shuman and Shasky of breach of contract?

## ANALYSIS

1. On appeal from summary judgment, we review the record and ask if there are any material issues of fact and whether the trial court erred in its application of the law. *Goodkind v. University of Minnesota*, 417 N.W.2d 636, 638 (Minn.1988). Factual inferences and doubts are to be resolved against the moving party. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981). Nonetheless, significant probative evidence tending to support their complaint must be offered by non-moving parties. *Carlisle v. City of Minneapolis*, 437 N.W.2d 712, 715 (Minn.Ct.App.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986)).

The due process clause protects a student's interest in attending a public university. *Abbariao v. Hamline University School of Law*, 258 N.W.2d 108, 112 (Minn.1977). A student is afforded more due process protection when school-imposed sanctions are for misconduct rather than academic failings. *Id.; see also Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 87, 98 S.Ct. 948, 953–54, 55 L.Ed.2d 124 (1978). When the sanction is for misconduct, a student must be given notice and some opportunity to be heard. *Dixon v. Alabama State Board of Education*, 294 F.2d 150, 158 (5th Cir.1961), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193. Additionally, if the sanction is the result of bad faith or arbitrary and capricious acts of the school, courts may intervene. *Abbariao*, 258 N.W.2d at 112.

Shuman and Shasky claim the law school acted in bad faith because the faculty was "out to get them." They allege the revocation of the honor code was arbitrary and capricious and that the reinstatement of the honor code was a quid quo pro exchange for appointing the faculty investigator the new investigator. After significant discovery, Shuman and Shasky have not produced probative evidence of such an exchange.

In all respects, Shuman and Shasky were given the procedures provided for in the honor code. Although the honor code was briefly revoked, it was applied to their case.

Furthermore, there was nothing in the honor code to prevent the appointment of the faculty investigator as a new investigator. In addition, at each stage of the proceedings the council, the review board and the grievance committee made their decisions in accordance with the honor code. The council, *all students,* voted 8 to 1 to reopen the investigation and 8 to 0 to affirm the faculty investigator's finding of probable cause. It is also noteworthy the faculty members of the grievance committee split evenly in their vote on whether to reverse the review board's dismissal of the case. The two student members who outvoted the remaining student member decided the vote in favor of remanding the case to the review board for a hearing.

Shuman and Shasky have presented nothing but conjecture, and there is no evidence to show collusion on the part of the faculty that would rebut the propriety of these proceedings. The students have not made out a substantive due process claim.

Shuman and Shasky also argue the school's arbitrary acts made a finding of guilt a foregone conclusion. For the above reasons, we find they have not met their burden of showing the hearing they did receive was tainted.

Shuman and Shasky were given a full evidentiary hearing with a right to counsel and the chance to call witnesses and cross-examine witnesses. This satisfies procedural due process requirements. *See Dixon,* 294 F.2d at 158–59. In the absence of probative evidence of bias, they have failed to show denial of procedural due process rights.

■ 2. Shuman and Shasky also claim the law school breached a contract based on the honor code. They argue that a contract was formed because the student body had voted to adopt the honor code. Even if we assume a contract was formed, however, in the absence of evidence of bad faith on the part of the school in revoking and reinstating the honor code with a new investigator, there can be no breach, because the honor code was applied to Shuman and Shasky.

Shuman and Shasky also argue it was a breach of the honor code to reopen the probable cause determination. In the absence of a showing of bad faith, we find the council did not abuse its authority to interpret the honor code.

The language of *Abbariao* is persuasive and applicable here. "Elements of the law of contracts have been applied to the student-university relationship, but rigid importation of contractual doctrine has been rejected." *Abbariao,* 258 N.W.2d at 113. Where, as here, the misconduct has an impact on academic standards, a school must act to protect those standards. Law schools would be frustrated in development of officers of the court if they could not act to maintain ethical standards for students' work.

## DECISION

Upon a fair consideration of the entire case, due process has been accorded to Shuman and Shasky, and the proceedings were proper under the honor code.

Affirmed.