Lance ZELLMAN, on Behalf of his minor son, M.Z., Relator,

v.

INDEPENDENT SCHOOL DISTRICT NO. 2758, Respondent.

No. C3-98-2313.

Court of Appeals of Minnesota.

May 18, 1999.

Review Denied July 28, 1999.

Marshall H. Tanick, Phillip James Trobaugh, Mansfield, Tanick & Cohen, P.A., Minneapolis, for relator.

James E. Knutson, Stephen M. Knutson, Michelle D. Kenney, Knutson, Flynn, Deans & Olson, P.A., Mendota Heights, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, RANDALL, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge.*

On writ of certiorari from a school district board's decision, Lance Zellman, on behalf of his child M.Z., appeals the determination that M.Z. should receive a zero

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

grade for a history project in which he copied text verbatim. Relator Independent School District No. 2758 provided M.Z. with several levels of meaningful review of his claim. The procedural due process afforded M.Z., and the substantial due process he received, demonstrate the district's determination was fair and reasonable. We affirm.

## FACTS

M.Z. appeals the school district's decision to affirm its superintendent's decision that M.Z. committed plagiarism and deserved a zero score for a high school history project. During the 1997–98 school year, M.Z. was enrolled in an American history course. At the start of the spring semester the teacher for the course distributed behavior guidelines to her students. They stated that a violation could result in "[n]ullification of any/all points for [the] assignment in question." M.Z. signed a copy of the guidelines. M.Z. also received a high school student handbook at the beginning of the school year. It defined plagiarism and provided that for a first offense of plagiarism a student would receive a zero grade.

During the spring semester, students in the course were assigned a final project. The project M.Z. selected required him to, in his "own words and perspective, explain the events which took place" during a decade. When the teacher assigned the project, M.Z. and another student joked about photocopying pages of a book, stapling the copies, and turning it in. The teacher heard the joke and then discussed plagiarism with the class and stated students were to complete the assignment in their own words.

After the students submitted their projects, the teacher discovered four students, including M.Z., had copied significant portions of their text verbatim from reference

Minn. Const. art. VI, § 10.

sources. The teacher contacted the students' parents and the next day discussed the matter with the students. Each of the students received a zero for the project.

M.Z. and his parents believed M.Z. had been treated unfairly and challenged the grade. They discussed the grade with M.Z.'s teacher on several occasions. M.Z. and his parents then met with the school principal. M.Z. admitted he had copied text, but he and his parents maintained the project instructions had not been clear. The principal met a second time with M.Z. and his parents. At the end of the meeting the principal affirmed the grade. The parents appealed the decision to the school district's superintendent. The superintendent held a hearing attended by M.Z. and his parents. The superintendent then interviewed M.Z.'s teacher and five of M.Z.'s classmates. The superintendent found M.Z.'s teacher had instructed the students to use their own words, that the teacher had explained plagiarism, and that M.Z. admitted to copying text verbatim. The superintendent concluded M.Z. had committed plagiarism and affirmed the grade in thorough and detailed findings, which fully supported the action of the teacher and the principal.

M.Z. and his parents next appealed this decision to the school district's board. During a closed portion of a school board meeting, the school board affirmed the superintendent's decision. M.Z. parents filed a writ of certiorari, which this court granted, to review the due process received by M.Z. and determine if the school district had acted in a manner consistent with its policies.

## ISSUES

I. Did the school student handbook form an enforceable unilateral contract?

II. Does a student have a protected property or liberty interest affected by a charge of academic misconduct?

III. Did the school district provide due process and is the decision by the school district's board arbitrary, capricious, or unreasonable?

## ANALYSIS

### I.

A sufficiently definite handbook, communicated to an employee, who continues to work for an employer, may form a unilateral contract between the employer and employee. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn. 1983). M.Z. asserts the student handbook similarly formed a unilateral contract between the school district and him. Although a student handbook provided by a university or private school may form a unilateral contract, we decline to extend this doctrine to a student handbook provided by a public school district. *See Abbariao v. Hamline Univ. Sch. of Law*, 258 N.W.2d 108, 113 (Minn.1977) (university); *VanLoock v. Curran*, 489 So.2d 525, 529 (Ala.1986) (private school).

Unlike the employment relationship or a student's payment of tuition, public schools are required by law to provide free education to students living within the school district. Minn.Stat. § 120A.20 (1998). Rather than a contractual arrangement, this represents the public policy of the state and its citizens. *See Abbariao*, 258 N.W.2d at 113 ("Elements of the law of contracts have been applied to the student-university relationship, but rigid importation of contractual doctrine has been rejected."). The relationship between the parties is similarly distinct. In contrast to the employment context, where an employer receives the results of an employee's labor in exchange for wages, the school district does not receive a similar benefit. The state benefits from the education of its citizens and students benefit from their own educational success.

Public education involves the participation of the student, the student's parents, the school district, and the state to prepare a student to be a citizen. The legislature recognized this complex rela-

tionship by making a student's parents "primarily responsible for assuring that the [student] acquires knowledge and skills that are essential for effective citizenship." Minn.Stat. § 120A.22, subd. 1 (1998). The nature of the relationship between a public school district and its students dictates against expanding the scope of handbook claims to this context. Therefore, we hold that a student handbook provided by a public school district does not form a unilateral contract between the student and the school district.

## II.

This court reviews de novo the procedural due process afforded a party. *See State v. Biron*, 266 Minn. 272, 281, 123 N.W.2d 392, 398 (1963). To establish a due process claim, M.Z. must identify specific facts that, if proven, would demonstrate the school district deprived him of a constitutionally protected property or liberty interest. *See Board of Regents v. Roth*, 408 U.S. 564, 568–71, 92 S.Ct. 2701, 2704–06, 33 L.Ed.2d 548 (1972). A student's "legitimate entitlement to a public education [is] a property interest which is protected by the Due Process Clause." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). M.Z. does not assert he was denied a public education, *see id.* (student's suspension from public school implicates a property interest); rather, he asserts he has a property or liberty interest affected by the charge of plagiarism.

Protected property interests stem from and are defined by "an independent source such as state statutes or rules entitling the citizen to certain benefits." *Id.* at 572–73, 95 S.Ct. at 735 (citation omitted). No statute is at issue in this case and, because it did not form a contract, the student handbook does not entitle M.Z. to benefits. Moreover, in finding a student's suspension implicated a property interest, the Court in *Goss* spoke in terms of a student's "total exclusion from the educational process." *Id.* at 576, 95

S.Ct. at 737. M.Z.'s grade on one project in one course does not implicate the entire educational process. *See Seamons v. Snow*, 84 F.3d 1226, 1234–35 (10th Cir. 1996) (student could be excluded from particular courses because they were "incidents of education" rather than the opportunity to participate in the educational process).

Similarly, a liberty interest must be based on a tangible interest. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976). In *Paul*, the Court held that an injury to "reputation alone, apart from some more tangible interests such as employment" does not involve a liberty interest. *Id.* Discussing *Goss*, the Court in *Paul* noted the potential damage to a student's reputation from charges of misconduct and suspension was connected to a state statute governing suspensions. *Id.* at 710, 96 S.Ct. at 1165. As noted above, no statute is at issue in this case and the student handbook does not form a tangible interest. M.Z. has not established that he has a protected property or liberty interest. *See Goss*, 419 U.S. at 598, 95 S.Ct. at 748 (Powell, J., dissenting) (expressing concern that a "student who is given a failing grade" would be able to assert due process claim).

## III.

Judicial intervention in the public school system requires restraint. *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). The judiciary should exercise even greater restraint in cases involving academic discipline in contrast to expulsions or suspensions. *Board of Curators v. Horowitz*, 435 U.S. 78, 87–91, 98 S.Ct. 948, 953–55, 55 L.Ed.2d 124 (1978). In cases of academic discipline, the Court has declined "to further enlarge the judicial presence in the academic community." *Id.* at 90, 98 S.Ct. at 955. And it has held a hearing may be "useless or harmful in finding out the truth as to scholarship." *Id.* (quoting *Barnard v. Inhabitants of Shel-*

*burne*, 216 Mass. 19, 102 N.E. 1095, 1097 (1913)). Even if M.Z. established that he had a protected property or liberty interest, he must still demonstrate that he did not receive the process he was due or that the school district acted in an arbitrary, capricious, or unreasonable manner.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). M.Z. asserts due process requires that he receive a hearing before an impartial hearing officer, such as an administrative law judge, and a full evidentiary hearing.

In a public school setting, the process due generally does not consist of more than an "informal give-and-take between the student and the disciplinarian." *Goss*, 419 U.S. at 584, 95 S.Ct. at 741. Thus, a hearing by a principal or school district superintendent is usually sufficient. *See Zehner v. Central Berkshire Reg'l Sch. Dist.*, 921 F.Supp. 850, 860 (D.Mass.1995) (hearing before school principal provided hearing before impartial hearing officer); *see also Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975) (public education system "relies necessarily upon the discretion and judgment of school administrators"). Nor does the informal process require a full evidentiary hearing. Due process requires that a student receive oral or written notice of the charges and a hearing at which the student has an opportunity to present "his side of the story." *Goss*, 419 U.S. at 581, 95 S.Ct. at 740. But there is no requirement that the student be allowed to examine or present witnesses. *Id.* at 581–82, 95 S.Ct. at 740 (hearing may immediately follow notice); *id.* at 584, 95 S.Ct. at 741 (due process does not require that student have opportunity to confront and cross-examine witnesses or to call witnesses). M.Z. is not entitled to a full evidentiary hearing or a hearing before an administrative law judge.

As to the procedure accorded M.Z., certiorari review of substantive due process by a school board is limited to questions affecting jurisdiction, the regularity of its proceedings, and whether the determination on the merits was arbitrary, capricious, or unreasonable. *See Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn. 1992). A decision is arbitrary, capricious, or unreasonable if it is "willful and unreasoning, without consideration of the facts and circumstances." *Brown v. Wells*, 288 Minn. 468, 472, 181 N.W.2d 708, 710–11 (1970); *see Markwardt v. State of Minn., Water Resources Bd.*, 254 N.W.2d 371, 374 (Minn.1977) (decision is arbitrary and capricious if it represents a governmental entity's will rather than its judgment). M.Z. asserts the school district's decision is arbitrary, capricious, and unreasonable and "based upon insufficient evidence."

The record fails to support M.Z.'s assertion. M.Z. received several levels of due process. He and his parents discussed his project several times with his teacher and principal. The superintendent held a hearing, interviewed M.Z.'s teacher and classmates, and made detailed findings of fact that supported his conclusions. The school board met in closed session and affirmed the superintendent's decision.

The process was also fair and reasonable. The school's policy stated a student was to receive a zero grade for a first offense of plagiarism. In a description of the situation given to M.Z.'s principal, M.Z.'s parents state, "Students were instructed that copied text information would be considered plagiarism and result in a zero." M.Z. admitted that he copied text verbatim for his assignment. M.Z.'s grade is fair and supported by the record.

The relationship between a teacher and a student should be one of mutual trust and confidence. The student has a duty to respond positively to the reasonable rules and regulations laid down by the teacher in conducting the class. Here the teacher acted in an eminently fair manner toward

the student. M.Z. violated the rule set out by the teacher and must suffer the consequences. The record demonstrates the school district provided M.Z. with substantial due process and its decision to affirm M.Z.'s zero grade was fair and reasonable.

### DECISION

A student handbook does not form a unilateral contract between a student and a public school district. M.Z. has not demonstrated that he has a protected property or liberty interest affected by the charge against him of academic misconduct. But even if he had established a protected interest, the school district provided his claim with substantial due process and acted in an eminently fair and reasonable manner.

**Affirmed.**