# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3315

_____

Spirtas Company, doing business as Spirtas Wrecking Company

*Plaintiff - Appellant*

v.

Nautilus Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 9, 2013
Filed: May 20, 2013

_____

Before RILEY, Chief Judge, BYE and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Spirtas Company was hired to demolish a bridge. It subcontracted the blasting and demolition of the longest span to Dykon Explosive Demolition Corporation. Some of the explosive charges failed. The span was mangled. The full demolition took more time and resources to complete. Spirtas incurred additional costs, and the general contractor withheld some payment from Spirtas. Spirtas made a claim under its commercial general liability policy to Nautilus Insurance Company. Nautilus

denied the claim. Spirtas sued for declaratory judgment and vexatious refusal to pay. The district court[1] granted summary judgment to Nautilus. *Spirtas Co. v. Nautilus Ins. Co.*, 2012 WL 4058067, at \*11, 897 F.Supp. 2d 790, ___ (E.D. Mo. 2012). Spirtas appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Edward Kraemer & Sons, Inc. hired Spirtas to demolish the Seneca Bridge in Illinois. One contract provision permitted Kraemer to backcharge Spirtas in several circumstances, including if Kraemer "suffers any damage whatsoever or is caused any expense, loss or liability" by Spirtas. Additionally, Spirtas indemnified Kraemer "from damage, injury to or destruction of property (including, but not limited to the loss of use of such property) arising out of, sustained, or in any way connected with the performance of the subcontract . . . ."

Spirtas subcontracted the demolition of the longest span to Dykon, which was to follow a demolition plan. The plan called for several explosive charges on the span so it would fall into the river below. The sections of the span would still be connected by a top strut. Once in the river, workers would neatly separate the pieces, each being removed by crane. The entire process would take 16 hours, suspending barge traffic.

To the dismay of Spirtas and Dykon, the operation did not go as planned. When Dykon triggered the charges, only a few successfully detonated. Part of the span fell to the river in a mangled mess, and part remained connected to the abutting span. The part of the span still connected to the abutment had to be separated and lowered into the river. Spirtas had to bring divers from Chicago to identify the pieces of the bridge and cut them apart. After this work, removal of the sections began. By

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

the time removal was complete, about 60 hours had elapsed – 44 more than planned.

Spirtas incurred $81,951.95 in additional costs due to the incident. Kraemer also withheld $150,328.97 in backcharge from Spirtas pursuant to the contract. Spirtas was insured by Nautilus under a commercial general liability policy. Spirtas made a claim for those amounts, $232.280.92 in total. Nautilus denied the claim.

Spirtas sued for declaratory judgment, breach of contract, and vexatious refusal to pay. *See* **§ 375.420 RSMo**. Nautilus cross-claimed for declaratory judgment. Nautilus attempted to avoid coverage based on affirmative terms of the policy: that Spirtas was not "legally obligated to pay" those amounts "as damages"; that the incident was not an "occurrence"; and that the amounts paid were not due to "property damage." Nautilus also invoked three exclusions – (j)(5), (j)(6), and (m) – to bar coverage.

The district court ruled that this incident was an occurrence and Spirtas was legally obligated to pay these damages resulting from property damage. *Spirtas*, 2012 WL 4058067, at \*10. The court then held, however, that all three exclusions applied, granting summary judgment to Nautilus. *Id.* at \*10-11.

## II.

"This court reviews de novo a grant of summary judgment, construing all facts and making all reasonable inferences favorable to the nonmovant." *General Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013), *citing Cent. Platte Natural Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1146 (8th Cir. 2011). This court "may affirm the judgment on any basis supported by the record." *Hohn v. BNSF Ry. Co.*, 707 F.3d 995, 1000 (8th Cir. 2013), *citing St. Martin v. City of St. Paul*, 680 F.3d 1027, 1032 (8th Cir. 2012). Summary judgment

is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**.

Spirtas challenges the district court's ruling that the exclusions preclude coverage. Nautilus responds but also argues – in its brief, but not in a cross-appeal – that coverage is not provided under the affirmative terms of the policy. Spirtas moves to strike these arguments, asserting they are proper only in a cross-appeal.

Spirtas's motion to strike is denied. This court can affirm on any basis supported in the record. *Hohn*, 707 F.3d at 1000. "[A]n appellee may, without filing a cross-appeal, defend a judgment on any ground consistent with the record, even if rejected or ignored in the lower court." *Tiedeman v. Chi., Milwaukee, St. Paul & Pac. Ry. Co.*, 513 F.2d 1267, 1272 (8th Cir. 1975). Nautilus is not attempting to "enlarg[e] [its] own rights" or "lessen[] the rights" of Spirtas. *See Johnson v. United States Fire Ins. Co.*, 586 F.2d 1291, 1294 n.7 (8th Cir. 1978). Because Nautilus is attempting only to sustain the same judgment on a different basis in the record, a cross-appeal is not required.

Having denied the motion to strike, this court will nevertheless assume without deciding that the affirmative terms of the policy provide coverage. Because the policy exclusions preclude coverage, it is unnecessary to address the coverage issues. *See, e.g.*, *Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 700 F.3d 1172, 1174-75 (8th Cir. 2012); *Brake Landscaping & Lawncare, Inc. v. Hawkeye-Security Ins. Co.*, 625 F.3d 1019, 1022 n.3 (8th Cir. 2010).

III.

This is a diversity case, and Missouri law applies. "As with any other contract, the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." ***D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.***, 316 S.W.3d 899, 902 (Mo. banc 2010), *citing* ***H.K. Porter Co. v. Transit Cas. Co.***, 215 S.W.3d 134, 140-41 (Mo. App. 2006). Missouri courts interpret terms in an insurance contract according to their plain meaning. ***Shahan v. Shahan***, 988 S.W.2d 529, 535 (Mo. banc 1999). "The plain or ordinary meaning is the meaning that the average layperson would understand." ***Id.*** Ambiguities are resolved in favor of the insured. ***Burns v. Smith***, 303 S.W.3d 505, 509-10 (Mo. banc 2010). "Missouri . . . *strictly* construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies." ***Id.*** "Exclusion clauses are strictly construed against the insurer, especially if they are of uncertain import." ***Aetna Cas. & Sur. Co. v. Haas***, 422 S.W.2d 316, 321 (Mo. 1968); *see also* ***Bituminous Cas. Corp. v. Walsh & Wells, Inc.***, 170 S.W.2d 117, 121 (Mo. App. 1943).

The district court held that three exclusions in the policy preclude coverage. ***Spirtas***, 2012 WL 4058067, at *10-11. This court agrees.

A.

Exclusion (j)(5) excludes from coverage property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." The district court ruled that the bridge span and the river were such "particular parts of real property" and thus excluded from coverage. ***Spirtas***, 2012 WL 4058067, at *10. Spirtas argues that the property damage here was primarily to the river, which was not the particular part of property being worked on.

Spirtas relies on *Columbia Mutual Insurance Co. v. Schauf*, 967 S.W.2d 74 (Mo. banc 1998), arguing for a narrow reading of "particular part." Schauf, a painter, was hired to paint and lacquer the interior and exterior of a new home. *Schauf*, 967 S.W.2d at 76. After lacquering the kitchen cabinets, he cleaned his paint sprayer. *Id.* The cleaning pump caught fire, extensively damaging the house. *Id.* The insurer denied coverage based on a exclusion nearly identical to the one here. *Id.* at 76-77. The court, however, held that the exclusion should be read narrowly, and exclude only damage to the kitchen cabinets:

> The exclusion bars coverage for damage to "[t]hat particular part of real property on which [the insured] *is performing operations*," not on which the insured *did perform operations*, *will perform operations*, or *has contracted to perform operations*. The exclusion applies to the "property *on* which [the insured] is performing operations," not to the area *in* which the insured is performing operations.

*Id.* at 81 (alterations in original).

Spirtas attempts to analogize, asserting the work was performed on the bridge – not the river – so damage to the river should not be covered. Here, however, the work was being performed on both the bridge and the river. According to the plan, the bridge span was supposed to fall into the river. That happened, albeit in a disorganized manner, when the charges detonated. At all times the work occurred on the river and the bridge. *See* ***Brake Landscaping***, 625 F.3d at 1021-23 (applying the same exclusion to preclude coverage for a landscaping company that used an incorrect herbicide that killed customers' lawns instead of only the weeds). Spirtas tries to distinguish *Brake Landscaping*, where there was no allegation of damage to any property not intentionally sprayed. So too here, where Spirtas intended to use both the bridge and the river. In *Brake Landscaping*, this court discussed *Schauf* and explained why the whole lawn, and not just the weeds, was the "particular part of real property": "[B]ecause spraying herbicide on the grass was an integral part of the job

-6-

of killing the weeds in the lawns, the lawns were the particular part of the real property that was the subject of Brake's operations." *Id.* at 1023. Here, dropping the bridge span into the river was an integral part of demolition. Therefore, both the bridge and river were the "particular part of real property" on which Spirtas's operations occurred.

An endorsement to the policy amends Exclusion (j)(5), exempting "'property damage' arising out of the inadvertent or mistaken demolition of property resulting from the insured's demolition and/or wrecking operations." Thus, if the incident fits this definition, Exclusion (j)(5) does not apply. Nautilus contends that this clause addresses situations where the incorrect structure is demolished. The district court agreed. *Spirtas*, 2012 WL 4058067, at *10.

Spirtas says the term is at least ambiguous, resulting in coverage. To be ambiguous, the term must be subject to two reasonable interpretations. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160, 163 (Mo. banc 2007). Here, the only reasonable interpretation is that this exception does not apply. The "plain or ordinary" meaning of the clause controls. *Shahan*, 988 S.W.2d at 535. The demolition here was not mistaken or inadvertent. Everyone intended demolition of the bridge span. The *execution* of the demolition may have been mistaken, but that is not addressed by the endorsement.[2]

The district court correctly held that Exclusion (j)(5) precludes coverage. Although only one exclusion is necessary to preclude coverage, this court will analyze the two additional exclusions addressed by the district court.

---

[2]Spirtas notes that the district court improperly stated that the endorsement only applied to demolition of "other" property. *See Spirtas*, 2012 WL 4058067, at *10. While Spirtas is correct that "other" does not appear in the endorsement, the plain language does not include property that is intentionally demolished, like the property here.

B.

Exclusion (j)(6) excludes property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Spirtas contends that nothing was restored, repaired, or replaced because the intent all along was to destroy the bridge span – even after the incident, the span was destroyed, not restored.

The district court rightly rejected this argument:

> [I]n the context of a demolition operation, having to correct the mangled state of the main span constituted "restoring" or "repairing." And clearly, that particular part of the river that sustained property damage in the form of loss of use had to be restored to navigability.

*Spirtas*, 2012 WL 4058067, at *10.

This court agrees that Exclusion (j)(6) precludes coverage.

C.

Exclusion (m) excludes

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
> (1) A defect, deficiency, inadequacy, or dangerous condition in 'your product' or 'your work'; or
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

-8-

Because the bridge span and the river were physically injured, this exclusion applies if the span or river were "impaired property." The policy defines *impaired property* as:

> tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
> b. You have failed to fulfill the terms of a contract or agreement; . . . .

Spirtas argues that the damage to the span and river qualify as "your work," and are therefore not impaired property. The policy's definition of *your work* indicates otherwise:

> 22. "Your work":
> a. Means:
> (1) Work or operations performed by you or on your behalf; and
> (2) Materials, parts or equipment furnished in connection with such work or operations.
> b. Includes:
> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
> (2) The providing of or failure to provide warnings or instructions.

Based on the definition, "your work" includes the actual operations and the materials used, but does not include the bridge span and the river. Therefore, the span and river are impaired property, and Exclusion (m) precludes coverage.

Spirtas also asserts that this exclusion is ambiguous and unenforceable. This court previously held otherwise. ***Modern Equip. Co. v. Cont'l W. Ins. Co.***, 355 F.3d 1125, 1128-29 (8th Cir. 2004).

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____