# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-1594

_____

John Doe

*Plaintiff - Appellant*

v.

University of St. Thomas

*Defendant - Appellee*

------------------------------

Jane Doe

Movant - *Amicus on Behalf of Appellee(s)*

Minnesota Private College Council

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 16, 2020
Filed: August 28, 2020

_____

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

After a fellow student accused Plaintiff John Doe of sexual misconduct, the University of St. Thomas, a private university, began disciplinary proceedings that resulted in Doe's suspension. Doe filed suit asserting Title IX violations and various state law claims. The only claim that survived to summary judgment was a state law negligence claim alleging that the University and its agents breached its "duty of care to Plaintiff and others to conduct [a disciplinary] process in a non-negligent manner and with due care." Am. Compl. ¶¶ 210–11. The district court[1] granted judgment to the University, finding that Doe had not shown a genuine issue of fact that the disciplinary proceedings were biased against him or that any alleged procedural flaws breached the University's duty of reasonable care.[2] We affirm.

We review the district court's grant of summary judgment and its interpretation of state law *de novo*, considering the facts in the light most favorable to the nonmoving party. *Chew v. Am. Greetings Corp.*, 754 F.3d 632, 635 (8th Cir. 2014). Summary judgment is properly granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome," and a dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1]The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota.

[2]Doe also claims that the magistrate judge erred in denying his motion to compel the deposition of his accuser. But he failed to file objections with the district court, and we cannot review the dismissal of a nondispositive pretrial motion. Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."). The parties did not consent to final disposition by a magistrate judge under 28 U.S.C. § 636(c), and "we do not have jurisdiction to hear a direct appeal of a magistrate judge's order on a nondispositive pretrial matter." *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 893 n.9 (8th Cir. 2005).

Doe argues that material facts show that the disciplinary process unfairly favored accusers and did not afford the necessary procedural due process protections, and therefore the University breached its duty of care. Before we can determine what facts are material to an alleged breach, we must know what duty of care the University, a private institution, owes its students. *Anderson*, 477 U.S. at 248 ("[T]he substantive law will identify which facts are material."). The parties agree that Minnesota common law governs, but they hotly contest whether the duty of care requires private universities investigating non-academic misconduct violations to act reasonably and in a manner that comports with constitutional due process or just refrain from acting arbitrarily.[3]

"When applying Minnesota law under our diversity jurisdiction, we are bound by the decisions of the Minnesota Supreme Court." *Badrawi v. Wells Fargo Home Mortg., Inc.*, 718 F.3d 756, 758 (8th Cir. 2013). "If the Minnesota Supreme Court has not spoken on a particular issue, this court must attempt to predict how the Minnesota Supreme Court would decide an issue and may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data." *C.S. McCrossan Inc. v. Fed. Ins. Co.*, 932 F.3d 1142, 1145 (8th Cir. 2019) (brackets omitted).

---

[3]Doe claims that the University has waived any argument that the district court applied the incorrect duty of care because it failed to file a cross appeal on that issue. Reply 20–25. We disagree. We review a district court's judgments, not its opinions. *Jennings v. Stephens*, 574 U.S. 271, 277 (2015). The appellee may "defend a judgment on any ground consistent with the record, even if rejected or ignored in the lower court." *Spirtas Co. v. Nautilus Ins. Co.*, 715 F.3d 667, 671 (8th Cir. 2013). The University's claim that the district court applied an incorrect standard of care does not enlarge its rights or lessen Doe's: under either theory the University would only be entitled to release from this claim. *See Jennings*, 574 U.S. at 276. As a result, the University only seeks to "sustain the same judgment on a different basis in the record, [and] a cross-appeal is not required." *Spirtas*, 715 F.3d at 671.

-3-

The Minnesota Supreme Court has not decided what duty of care private universities owe their students when investigating non-academic misconduct. The parties agree that *Abbariao v. Hamline University School of Law*, 258 N.W.2d 108 (Minn. 1977), is the most recent case to address the common law duty universities owe their students. There, a law student claimed that the university violated his rights to procedural due process under the federal constitution, as well as a common law duty of fair treatment, when it expelled him for failing to maintain required grades. *Id.* at 111. Because the district court had granted a motion to dismiss, the Minnesota Supreme Court accepted the allegation that Hamline was a public university and that the expulsion implicated the student's due process rights.

The Minnesota Supreme Court held that an academic expulsion from a state actor violates due process if it "results from the arbitrary, capricious, or bad-faith actions of university officials." *Id.* at 112. The court noted that "judicial examination into issues of academic performance may well be different from cases involving expulsion for alleged misconduct not directly related to academic proficiency." *Id.* at 113. In the event that Hamline was a private university (and not subject to federal due process requirements), the court explained that under Minnesota common law "a university may not arbitrarily expel a student." *Id.* at 112 (relying on *Gleason v. Univ. of Minn.*, 116 N.W. 650 (1908)). Notably, in *Gleason*, the student had been charged with academic deficiencies and "certain insubordinate acts toward the faculty of the University of Minnesota and with inciting younger students to insubordinate acts towards said faculty." 116 N.W. at 652. Thus, the student's action in *Abbariao* stated a claim for relief if a private or public university had "arbitrarily" expelled him.

Following *Abbariao*, the Minnesota Court of Appeals extended the common law duty "not to expel students in an arbitrary manner" to non-academic misconduct discipline. *Rollins v. Cardinal Stritch Univ.*, 626 N.W.2d 464, 470 (Minn. Ct. App. 2001). Minnesota courts have also clarified that misconduct expulsions from public universities only require that the "student must be given notice and some opportunity

-4-

to be heard." *Shuman v. Univ. of Minn. Law Sch.*, 451 N.W.2d 71, 74 (Minn. Ct. App. 1990).

Turning to this case, the district court dismissed the holding in *Rollins* and rejected the University's argument that the *Abbariao* arbitrary standard applied. Instead, it adopted Doe's reasonable care standard that the University "had an obligation to create and administer a process that was fair and impartial to both [the accuser and the accused] . . . and [to] provide some measure of due process in the proceeding to ensure that an accurate outcome was achieved." D. Ct. Dkt. 296 at 12. In doing so, the district court explained that *Abbariao* requires a "panoply of safeguards designed to ensure the fairness of factfinding" for misconduct expulsions. *Id.* (quoting *Abbariao*, 258 N.W.2d at 112).

Although federal courts applying Minnesota law must predict how the Minnesota Supreme Court would rule, *C.S. McCrossan Inc.*, 932 F.3d at 1145, we respectfully think the district court predicted the wrong standard here. The district court had no reason to disregard *Rollins*, the only Minnesota court decision to apply the common law duty to a private university's non-academic expulsion. Although *Abbariao* cautions that judicial examinations of misconduct expulsions "may well be different," it applied the arbitrary standard announced in *Gleason*, where the student faced academic and misconduct charges. The district court erred by rejecting *Rollins* and formulating a reasonable care standard that no Minnesota court has adopted.

Even under the district court's more permissive reasonable care standard, Doe's claims did not survive summary judgment. Applying *Abbariao*'s "arbitrary, capricious, or bad-faith" standard, we conclude the same. 258 N.W.2d at 112. Although neither party tells us how Minnesota law applies an "arbitrary" standard of care, we find reference to Minnesota administrative law and due process precedents helpful. *See Abbariao*, 258 N.W.2d at 113 (private university's duty parallels due process requirements). The Minnesota Supreme Court has long held that an "action is arbitrary, oppressive, and unreasonable so that it represents [the agency's] will and

not [its] judgment." *Webster v. Marshall*, 133 N.W.2d 533, 535 (Minn. 1965). "A university's decision may be arbitrary if the university violates its own procedures."[4] *Tatro v. Univ. of Minn.*, 800 N.W.2d 811, 816 (Minn. Ct. App. 2011), *aff'd on other grounds*, 816 N.W.2d 509 (Minn. 2012).

Doe alleges that the University's training materials "caused the investigators and adjudicators in this case to manifest a Bias Against Accused Students so strong that it eliminated [the University]'s ability to satisfy the Negligence Duty." Doe Br. 12. Specifically, he claims University staff handling disciplinary matters were trained to believe that accusing students made false allegations less than 10% of the time, 51% of college males admitted to at least one sexual assault during college, and that accusing students that give inconsistent statements or omit details should be believed. *Id.* at 24. To further show the University's bias, he points to the materials providing a template for finding an accused student responsible for misconduct (but not one for the opposite result) and other differences in services the University staff offers accusers versus the accused. *Id.* at 24–25.

The district court held that Doe had not overcome the presumption of honesty and integrity afforded to school administrators. D. Ct. Dkt. 296 at 12 (citing *Richmond v. Fowlkes*, 228 F.3d 854, 858 (8th Cir. 2000)). That presumption applies unless "actual bias, such as personal animosity, illegal prejudice, or a personal or financial stake in the outcome can be proven."[5] *Fowlkes*, 228 F.3d at 858. Doe

---

[4]Doe does not appear to have raised any procedural irregularities in his briefing to us. Instead, we gather that he complains that the University staff followed University policy. We recognize that the district court found, *sua sponte*, two deviations that purported to violate its standard of care. The court, however, found them harmless. In our view, these purported violations do not show the proceedings were arbitrary.

[5]Although *Fowlkes* involved a presumption that federal courts afford administrators for federal due process claims, it appears that Minnesota law applies a similar presumption. *R.T. v. Univ. of Minn.*, No. C9-01-1596, 2002 WL 1275663,

presents no evidence showing any of the University staff were individually biased against him.

Even without a presumption, we do not find a genuine dispute of material fact. Although we are troubled by University training that implicates stereotypes rather than individualized assessments, there is no evidence that these materials influenced the University staff's judgment. No reasonable jury would find bias here because the investigators did question the accuser about inconsistencies in her story[6] and found her to be credible. Further, no implication of bias arises by asking the accuser to preserve evidence or by offering her mental health services. None of Doe's evidence shows that the University was "out to get [him]," *Shuman*, 451 N.W.2d at 74, or that University's proceedings were the product of will, instead of judgment.

The judgment of the district court is affirmed.

_____

_____

at *3 (Minn. Ct. App. June 11, 2002) ("Administrative proceedings are presumed to be honest and regular, and the party claiming otherwise has the burden of proof.").

[6]For this reason, we reject Doe's claim that the University process was biased because it did not let him cross-examine his accuser. Like the district court, we note that the University's proceedings do not permit a full-blown criminal trial, and it was not arbitrary to follow University policy in this manner.