Joshua HIGGINBOTTOM, By His Natural Guardian, Karen Dale DAVIS, and Merlin Q. Christian Farnworth, By His Next Friend and Natural Guardian, Kathryn Farnworth, and Anton Cousin, By His Next Friend and Natural Guardian, Tracy Mosley, and Steven Deluca, By His Next Friend and Natural Guardian, Ralph Deluca, Plaintiffs,

v.

Urbie KEITHLEY, In His Individual Capacity and His Official Capacity as Principal of Lillian Emery Elementary School, and Larry Brunson, In His Individual Capacity and His Official Capacity as Teacher of Lillian Emery Elementary School, and Edward Adams, In His Official Capacity as Superintendent of New Albany–Floyd County Consolidated School Corporation, and Jerol Miller, In His Official Capacity as Trustee of New Albany–Floyd County Consolidated School Corporation, et al., Defendants.

Nos. NA 98–0021–C B/S, NA 98–0073–C B/S, NA 98–0076–C B/S.

United States District Court,
S.D. Indiana,
New Albany Division.

Oct. 6, 1999.

Bruce A. Brightwell, Louisville, KY, Julia A. Fifer, Fifer Law Office, New Albany, IN, Brent Welke, English, IN. for plaintiffs.

William H. Kelley, Kelley Belcher & Brown, P.C., Bloomington, IN, for defendants.

### ENTRY DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARKER, Chief Judge.

Plaintiffs, former sixth grade students at Lillian Emery Elementary School, bring a 42 U.S.C. § 1983 action against their teacher, the superintendent and trustees of the county School Corporation. They contend that their teacher, Larry Brunson ("Brunson"), subjected them to an unreasonable strip search in violation of the Fourth and Fourteenth Amendments. They also allege a number of pendent state law claims based on the search, including battery and intentional and negligent infliction of emotional distress.[1] Plaintiff

---

1. In our prior ruling on defendants' motion for judgment on the pleadings, we dismissed plaintiffs' Fifth Amendment claim, the individual capacity claim against principal Keithley, and the pendent state law claims of false imprisonment/confinement, sexual battery and sexual abuse. We expressed no opinion on plaintiffs' invasion of privacy/bodily integrity claim, which defendants failed to address. Neither party mentions the putative invasion of privacy/bodily integrity claim at the summary judgment stage, so we again refrain from attempting to resolve the viability of such a claim.

Higginbottom amended his complaint to include a state law breach of contract claim, contending that the student guide issued to parents by the School Corporation created a contract that the School Corporation breached when Brunson conducted the alleged unreasonable strip search. Defendants move for summary judgment, and plaintiffs counter-move for summary judgment on the breach of contract and Fourth Amendment claims.[2] For the reasons discussed, the defendants' motion is *GRANTED IN PART* and *DENIED IN PART*, and plaintiffs' motion is *DENIED*.

## Background

Larry Brunson taught a class of male and female sixth-graders, including the plaintiffs, at Lillian Emery Elementary School during the 1995–1996 school year. In our March 16, 1999, entry granting in part and denying in part defendants' motion for judgment on the pleadings ("prior entry"), we recited the general allegations in the plaintiffs' three complaints, so we dispense with detailing the specifics of plaintiffs' complaints here. In short, plaintiffs contend that after the disappearance of $38.00 that someone left unattended on a snack cart, Brunson singled out the plaintiffs from the rest of the students, took them to the boys' bathroom, and instructed them to strip down to their underwear. He then searched the boys' clothing for the missing money to no avail. Brunson allegedly subsequently insisted that each boy hold out his underwear so that he could inspect their penis and buttock areas to determine if they had stashed the money in those locations. According to plaintiffs' complaints, while Brunson searched the eleven and twelve-year-old boys in the bathroom, someone evidently discovered the missing $38.00 in the possession of another student from another class.

The parties provide us with a factual record on summary judgment that is no more developed than the nascent record that existed when defendants moved for judgment on the pleadings. Aside from the lack of citation to and development of the factual record, both parties fail to comply with Local Rule 56.1, which requires a party opposing summary judgment (in this case, both parties) to respond to "each factual assertion in the moving party's Statement of Material Facts" and, if applicable, to file a separate Statement of Additional Facts that warrant a denial of summary judgment. Local Rule 56.1(c)(1). The practical result of the parties' omissions is that we have virtually no facts to construe in either party's favor on summary judgment. Left to our own devices, we might have searched the record and teased out the facts we consider most relevant to the issues before us. But where, as here, some claims are especially fact-sensitive, such as plaintiffs' Fourth Amendment claims, and where the parties have not provided us with the full record, we once again must defer a fuller discussion until the parties develop the record, if that ever occurs. Therefore, for now, we cite only to the parties' brief statements of (allegedly) undisputed and material facts, which each party filed in support of their motions for summary judgment, when considering the claims advanced by the parties in those motions.

The parties agree, or at least fail to dispute, that on May 3, 1996, someone reported $38.00 missing from a snack cart at the elementary school. *See* Higginbottom Mem. Supp. Partial Summ. J. at 4, ¶ 4 (Statement of Material Facts). During the

---

2. Plaintiff Higginbottom has assumed the primary advocacy for all four plaintiffs, having filed a response to defendants' motion for summary judgment, a motion for partial summary judgment on the Fourth Amendment claim, and a "cross motion" for summary judgment on the breach of contract claim. Plaintiff Farnworth filed his own response to defendants' motion for summary judgment, but he joined in Higginbottom's two summary judgment motions. Plaintiffs Deluca and Cousin joined in Higginbottom's and Farnworth's responses and Higginbottom's summary judgment motions and statement of undisputed facts.

afternoon of the same day, Brunson apparently searched each of the plaintiffs in the boys' bathroom and required them to remove all articles of clothing except their underwear. *Id.* Plaintiffs claim that Brunson had no individual suspicion that any of the plaintiffs had taken the money, although they fail to provide us with any excerpt of the record to support that assertion. *Id.* ¶ 5. Defendants contend (without citation to the record) that Brunson never touched plaintiffs at any point during the search and that plaintiffs suffered no physical injury, but defendants do not otherwise dispute that Brunson searched the four plaintiffs in some manner. *See* Defs.' Statement Material Facts ¶¶ 2,5; Defs.' Mot. Summ. J. at 6. Defendants also contend that Brunson did not consider the socio-economic status of any student before searching plaintiffs. *Id.* ¶ 4. The parties agree that prior to Brunson's search of the plaintiffs, the School Corporation had issued a written student guide to parents that prohibited "strip searches" of students. *Id.* ¶ 1; *See* Higginbottom "Findings of Undisputed Fact" Supp. "Cross [sic] Motion for Partial Summ. J. for Breach of Contract" ¶ 5.

Plaintiffs bring this action against New Albany–Floyd County Consolidated School Corporation ("School Corporation") and against Brunson in his individual capacity.[3] The plaintiffs allege that both the School Corporation and Brunson violated 42 U.S.C. § 1983 due to Brunson's alleged strip search of the plaintiffs. Plaintiffs allege § 1983 claims based on the Fourth and Fourteenth Amendments, as well as state law claims for breach of contract, battery, and intentional and negligent infliction of emotional distress. We now proceed to consider the legal merits of the parties' summary judgment contentions.

*Summary Judgment Standards*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Eiland v. Trinity Hosp.,* 150 F.3d 747, 750 (7th Cir.1998). However, neither the mere existence of some alleged factual dispute between the parties, *Baulos v. Roadway Express, Inc.,* 139 F.3d 1147, 1152 (7th Cir.1998), nor the existence of "some metaphysical doubt as to the material facts," *Fairchild v. Forma Scientific, Inc.,* 147 F.3d 567, 571 (7th Cir.1998) (internal quotations omitted) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), is sufficient to defeat a motion for summary judgment. In considering a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. *See Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir.1992). Yet, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but also required. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265; *Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir.1989).

---

**3.** As we mentioned in our prior ruling on defendants' motion for judgment on the pleadings, plaintiffs' claims against the School Corporation's superintendent and trustees in their official capacities, as well as the claims against Brunson in his official capacity, are simply claims against the School Corporation itself. Therefore, we will dispense with the technical descriptions of the parties involved and instead refer to plaintiffs' official capacity claims as those against the "School Corporation." *See Gibson v. City of Chicago,* 910 F.2d 1510, 1519 n. 14 (7th Cir. 1990) ("An official capacity suit against a municipal officer is merely another way of asserting a claim against the municipality.").

*Discussion*

## I. Plaintiffs' State Law Breach of Contract Claim Based on the Student Guide

Plaintiffs claim that the School Corporation violated the terms of a student guide issued to parents when its agent, Brunson, searched the four plaintiffs. They contend that the student guide formed a contract between the School Corporation and the students' parents, with the plaintiffs-students serving as third-party beneficiaries. Plaintiffs also invoke the theories of promissory estoppel and quasi-contract as grounds to hold the School Corporation liable for Brunson's search of plaintiffs. All parties move for summary judgment, insisting (despite the generally inadequate factual record) that the contract claim is amenable to disposition at the summary judgment level since the parties agree on the existence of the student guide and its contents. We find that plaintiffs' claim fails as a matter of law, as plaintiffs fail to offer either relevant legal authority or evidentiary support for their position and neglect even to specify the elements of their claim.

■ After our prior entry, plaintiff Higginbottom amended his complaint to include a breach of contract claim based on the student guide, which the School Corporation promulgated pursuant to Indiana statute. Indiana Code § 20–8.1–5.1–7 requires school corporations to establish and publicize written disciplinary rules. Although a school corporation must make a good faith effort to disseminate such rules to students or parents, the publicity requirement "may not be construed technically" and a school corporation is not required to ensure that every student or parent actually receives them. Ind.Code § 20–8.1–5.1–7. The State of Indiana, in passing compulsory education laws that mandate the availability of public elementary education for its citizenry, has recognized that public schools stand "in the relation of parents and guardians to the students" *(in loco parentis)* regarding matters of discipline and conduct of stu-

dents. Ind.Code § 20–8.1–5.1–3(b). Likewise, the Supreme Court has emphasized that while public schools are cloaked with the authority of the state for purposes of affording students constitutional protections, the very nature of a public school's power over its students "is custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults." *Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 655, 115 S.Ct. 2386, 2392, 132 L.Ed.2d 564 (1995); *New Jersey v. T.L.O.,* 469 U.S. 325, 333, 105 S.Ct. 733, 738, 83 L.Ed.2d 720 (1985). Ultimately, unlike the university setting where students pay tuition and generally operate as adults, the relationship between elementary students and a public school is not by its nature contractual.

In light of this relationship between a public school and its students, defendants correctly note that the student guide issued by the School Corporation fails to evidence the hallmarks of traditional contract formation. Plaintiffs admit as much in their response, stating that the student guide lacks the "classic offer, acceptance and consideration" necessary to form an express or implied contract between the School Corporation and the plaintiffs' parents. Higginbottom Response at 7. Nor do plaintiffs attempt to explore the contractual subtleties, if any, that may infuse and surround the School Corporation's relationship with its students and their parents.

Furthermore, the Indiana Supreme Court has never held that a contractual relationship exists between a public elementary school and its students or their parents. In fact, in the employer-employee context, which inherently involves arms-length transactions and lends itself to a contractual framework, Indiana courts, unlike courts in other jurisdictions such as Illinois, have been resolute in refusing to construe employee handbooks or guides as a source of contractual rights. This Court recently had occasion to assess the state of Indiana law regarding employee handbooks as unilateral contracts, and we con-

cluded that an employee handbook lacking a definite term of employment or adequate independent consideration failed to create a contractual right to continued employment under Indiana law. *See St. John v. Town of Ellettsville,* 46 F.Supp.2d 834, 842–43 (S.D.Ind.1999) (collecting Indiana cases). Other courts that have construed handbooks as contracts in the employer-employee context nonetheless have refused to import that logic into the public educational setting, even where public primary or secondary schools issue handbooks to students or parents. *See, e.g., Zellman v. Independent Sch. Dist. No. 2758,* 594 N.W.2d 216, 219–20 (Minn.Ct.App.1999); *Achman v. Chisago Lakes Indep. Sch. Dist. No. 2144,* 45 F.Supp.2d 664, 670 (D.Minn.1999) (despite state's recognition that personnel handbooks may qualify as contracts in the employer-employee context, that state's law has never suggested that a student/school district relationship is contractual in nature). Hence, in *Zellman,* the court eschewed the application of contract principles to the public education setting:

> A sufficiently definite handbook, communicated to an employee, who continues to work for an employer, may form a unilateral contract between the employer and employee.... Although a student handbook provided by a university or private school may form a unilateral contract, we decline to extend this doctrine to a student handbook provided by a public school district.

> Unlike the employment relationship or a student's payment of tuition, public schools are required by law to provide free education to students living within the school district. Rather than a contractual arrangement, this represents the public policy of the state and its citizens. The relationship between the parties is similarly distinct. In contrast to the employment context, where an employer receives the results of an employee's labor in exchange for wages,

the school district does not receive a similar benefit. The state benefits from the education of its citizens and students benefit from their own educational success.

> Public education involves the participation of the student, the student's parents, the school district, and the state to prepare a student to be a citizen. The legislature recognized this complex relationship by making a student's parents primarily responsible for assuring that the [student] acquires knowledge and skills that are essential for effective citizenship. The nature of the relationship between a public school district and its students dictates against expanding the scope of handbook claims to this context.

*Zellman,* 594 N.W.2d at 219–20 (citations and quotations omitted).

█ We find no reason to add to this analysis under the facts of this case, especially in light of Indiana's approach to employee handbooks and the absence of any effort by plaintiffs to analyze the requisite elements of contract formation in the context of the student-public elementary school relationship. Indeed, the compulsory nature of public elementary education, which requires public schools to accept enrollment of children in their districts and mandates student attendance, militates against importation of mutual assent and consideration principles into the public elementary school context. We decline to conclude (especially without any evidence or discussion from the plaintiffs to the contrary) that the School Corporation desired legal consequences to attach to its student guide, especially where the guide's contents are not negotiated with students or parents, they are subject to unilateral change by the School Corporation (they had been revised 25 times since 1972), and they are meant to implement a statutory directive to effectively educate children, an objective that, in this particular case, is based on public policy and lacks a commercial contract element.[4]

4. While courts have declined to characterize the student-public elementary school relationship as contractual, the contract theory has received some support in the limited academic scholarship on the topic. *See* Kevin P.

We need not say much more to dispose of plaintiffs' "[o]ne contract theory" based on promissory estoppel. Higginbottom Response at 3. In one brief paragraph void of any analysis, record evidence, or legal authority, plaintiffs claim that the contents of the student guide represented the School Corporation's promises on how to regulate student conduct, which parents and students relied upon to their detriment when the plaintiffs attended elementary school and Brunson searched them. *Id.*

■ The doctrine of promissory estoppel generally provides that a promisor is estopped from denying the enforceability of a promise when, in reliance on that promise, the promisee substantially changes his or her position. *See Weinig v. Weinig,* 674 N.E.2d 991, 996 (Ind.App. 1996). Because the doctrine of promissory estoppel can act as a substitute for lack of consideration or mutuality, a party may recover on the theory even if an actual contract does not exist. Plaintiffs fail to mention the elements of a promissory estoppel claim, which include: (1) a promise by the promisor, (2) made with the expectation that the promisee will rely thereon, (3) which induces reasonable reliance by the promisee, (4) of a definite and substantial nature, and (5) injustice can be avoided only by enforcement of the promise. *See First Nat'l Bank of Logansport v. Logan Mfg. Co.,* 577 N.E.2d 949, 954 (Ind.1991).[5] The party who alleges and relies on the doctrine of promissory estoppel has the burden to establish all facts necessary to support its application, and herein emerges the affliction that burdens plaintiffs' claim in this case. *Id.* at 955.

■ Plaintiffs fail to offer any record evidence that they detrimentally relied on the student guide. Plaintiffs claim that their parents signed manuals that they received from the School Corporation, yet they fail to provide us with those signed documents or otherwise substantiate that assertion. More importantly, plaintiffs neglect to provide any affidavits or cite to any deposition testimony indicating that their respective parents relied on the student manual or that they changed their position based on its content. We have no evidence suggesting that plaintiffs attended Lillian Emery because of any representation in the student guide, or, for that matter, that the plaintiffs would have at-

Mcjessy, Comment, *Contract Law: The Proper Framework For Litigating Educational Liability Claim,* 89 NW. U.L. REV. 1768 (1995) (noting that courts have been hostile to tort claims against educational institutions, and insightfully urging that courts should adopt contract theory as governing relationships between students and universities, trade schools, private elementary/secondary schools, and public schools); *but see* Victoria J. Todd, *The Non–Contractual Nature of the Student–University Contractual Relationship,* 33 U. KAN. L. REV. 701 (1985). Even proponents of the contract paradigm in the general educational setting recognize its incompatibility with the elementary student-public school relationship, describing the elements of mutual assent and consideration as "difficult if not impossible to prove" in that context. K. Mcjessy, 89 NW. U.L. REV. at 1803. While we can imagine scenarios under which the contract cause of action holds promise in the educational context, Indiana courts (and courts generally) have not accepted it in the public elementary setting, and as a federal court applying state law, we are disinclined to

make bold departures in areas of the law that we have no responsibility for developing. *See Afram Export Corp. v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1370 (7th Cir.1985). Moreover, as we have said, plaintiffs have provided virtually no argument explaining why this case lends itself to a contractual analysis, and thus we find it especially inappropriate to advocate novel theories on their behalf.

5. The Indiana Supreme Court has adopted Section 90 of the Restatement (Second) of Contracts, which provides, in part:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
*See First Nat'l,* 577 N.E.2d at 954; *Jarboe v. Landmark Comm. Newspapers of Indiana, Inc.,* 644 N.E.2d 118, 121 (Ind.1994).

tempted to attend some other school but for their reliance on it. In short, plaintiffs offer no evidence whatsoever that the content of the student guide factored into their decisions to send their children to Lillian Emery Elementary School.

Moreover, we have not located any Indiana case, nor has plaintiffs provided one, recognizing a promissory estoppel claim against a public school based on a student guide or handbook. We acknowledge that the theory may be well-suited to claims brought by students/parents against public schools, but we are not prepared to endorse it where Indiana's courts have never done so.[6]

Finally, plaintiffs resort to a quasi-contract theory, contending that principles of "reason, law and equity" require our finding that the student guide is a contract that the School Corporation breached when Brunson allegedly searched the plaintiffs unreasonably. Higginbottom Response at 7. Plaintiffs' quasi-contract claim collapses from within, as plaintiffs fail to plead or discuss its essential element, unjust enrichment.

■■■ Quasi-contracts, also referred to as contracts "implied in law," are not contracts in the true sense; they rest on a legal fiction imposed by law without regard to the assent of the parties. *See Galloway v. Methodist Hosps., Inc.*, 658 N.E.2d 611, 614–15 (Ind.Ct.App.1995). Plaintiffs neglect to elaborate the burden that confronts them; to recover on the basis of quasi-contract, they must demon-strate that they rendered a benefit to the School Corporation, under circumstances which equity demands compensation in order to prevent an unjust enrichment. *Id.* The purpose of the doctrine "is to provide the injured party with the fair value of the work and services rendered and thus prevent unjust enrichment to another." *Wright v. Pennamped*, 657 N.E.2d 1223, 1229–30 (Ind.Ct.App.1995) (additionally noting that plaintiffs generally must establish that the defendants "impliedly or expressly requested that the benefit be conferred").

■■■ Plaintiffs never mention "unjust enrichment" or explain what measurable and retained benefit they conferred upon the School Corporation by attending a free, public school after the School Corporation promulgated the student guide. Even assuming that plaintiffs identified some benefit and demonstrated that its acceptance and retention by the School Corporation without compensation would be unjust, plaintiffs have failed to consider what type of compensation would cure that putative injustice. Plaintiffs postulate in a footnote (under the promissory estoppel claim no less) that the School Corporation may incur a benefit by defending against unspecified parental complaints in reliance on the student guide, but plaintiffs (admittedly) fail to offer any record evidence in support of that unfounded assertion. *See Russell v. Acme–Evans Co.*, 51 F.3d 64, 69 (7th Cir.1995) (noting that in assessing a motion for summary judgment, a court

6. As practical consideration, even if plaintiffs prevailed on their undeveloped promissory estoppel theory, their recovery would be limited to reliance damages only. *See Sammons Communications of Indiana, Inc. v. Larco Cable Constr.*, 691 N.E.2d 496, 499 (Ind.Ct.App. 1998). We suspect that plaintiffs primary injury derives from the emotional trauma of the alleged unreasonable search, not from any reliance on the student handbook, a fact that would decrease their recovery appreciably. *See Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 995 (Ind.Ct.App.1998) (finding that emotional distress is not a recoverable damage under a contract theory); *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 866 (5th Cir.1999) (holding that mental anguish damages are compensatory in nature and do not represent an injured party's reliance on a promise, and noting that promissory estoppel claims are contractual in nature). Moreover, since a claim for promissory estoppel will succeed only if injustice can be avoided by enforcement of the alleged promise, and since a court may give a reliance remedy as "justice requires," plaintiffs' possible recovery under its Fourth Amendment claim (predicated on the same alleged unreasonable search) would mitigate the injustice in this case considerably. *See* RESTATEMENT (SECOND) OF CONTRACTS § 90.

assumes that the record at trial would be identical to the record that has been compiled in the summary judgment proceedings).

Arguably, assuming a school corporation functions as a viable commercial actor shielded from its public policy mandate to provide compulsory education (e.g., a private institution), it receives a measurable benefit if parents pay tuition after relying on the terms in a student handbook. Or perhaps the school would receive a benefit if their paying students self-disciplined themselves according to handbook rules with the understanding that the school also would abide by certain restrictions in the handbook, such as not strip-searching students. Our point is that while these hypotheticals suffer their fair share of problems under quasi-contract theory, plaintiffs fail to engage in this type of analysis, or any analysis for that matter, to explain why we should expand unjust enrichment doctrine to include student claims against public elementary schools. Not surprisingly, like plaintiffs' previous contract-related claims, we have not located any Indiana cases, nor have plaintiffs cited any authority, recognizing the validity of quasi-contract theory as applied to student/parent lawsuits against public elementary schools. Accordingly, we find that the plaintiffs' contract-related claims based on the student guide warrant dismissal as a matter of law, and we *GRANT* defendants' motion for summary judgment and *DENY* plaintiffs' motion for summary judgment on those issues.

## II. Section 1983 Claims for Violations of the Fourth and Fourteenth Amendment

### A. Fourth Amendment

#### 1. The School Corporation

Plaintiffs have asserted a claim under 42 U.S.C. § 1983 against the School Corporation for an alleged violation of their Fourth Amendment rights due to the strip search conducted by Brunson. In our prior ruling, we denied defendants' motion for judgment on the pleadings,

holding that plaintiffs sufficiently alleged in their complaints that the School Corporation tolerated unreasonable strip searches of students, which could have represented either its official policy or its accepted custom and practice. *See* Court's March 16, 1999, Entry at 12. However, we noted that "plaintiffs may find themselves mounting a Picket's Charge at the summary judgment level, especially in light of their burden of proving both a pattern of strip searches (in the absence of an express policy) and the causal nexus between the municipal policy or custom and their alleged injury." *Id.* Summary judgment has arrived, with the plaintiffs losing a battle that they never attempted to wage, as they have not adduced any evidence that the School Corporation had either an express policy or an accepted custom of tolerating strip searches that caused their alleged injury.

In our prior ruling, we recognized that a municipality could be liable under § 1983 if an action pursuant to an official policy or custom of the municipality causes a constitutional tort. *See Lanigan v. Village of East Hazel Crest,* 110 F.3d 467, 478–79 (7th Cir.1997) (*citing Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Hence, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Plaintiffs cannot claim municipal liability unless they demonstrate that the enforcement of its policy was the "moving force" behind the constitutional violation. *See Cornfield v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1324 (7th Cir.1993). That is, "[t]here must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Lanigan,* 110 F.3d at 479 (*quoting City of Canton v. Harris,*

489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989)).

Therefore, we held that for plaintiffs to prevail on a § 1983 claim against the School Corporation, they had to establish one of the following: (1) there existed within the New Albany–Floyd County school system an express policy that when enforced caused a constitutional depriva-; tion; (2) there existed within the New Albany–Floyd County school system a practice or custom of such unconstitutional conduct; or (3) the constitutional injury was caused by a person with final policy making authority. *See Oliver v. McClung*, 919 F.Supp. 1206, 1213 (N.D.Ind.1995) (*citing McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995); *Cornfield*, 991 F.2d at 1324).

Importantly, we recognized that plaintiffs remained silent in their complaints on theory three above, never alleging that the School Corporation is liable based on a constitutional violation by a person with final policy making authority. *See* Court's March 16, 1999, Entry at 10. Instead, plaintiffs claimed that their complaints reflected one of the first two theories, contending that only discovery would reveal whether the School Corporation adopted an express written policy tolerating strip searches or whether it authorized a practice or custom of allowing unreasonable strip searches. *See, e.g.,* Pls.' Response to Mot. J. Pleadings at 3–5 ("Whether one or both of the first two bases of liability will apply to the present case, cannot be determined without discovery on the matter ... the Plaintiffs would argue [that the School Corporation] exercises a *practice* of strip searching students without reasonable suspicion, regardless of the *written* policy, as evidenced by the supposed tolerance of the incident complained of here.").

The "discovery" conducted in the interim, if any actually occurred, failed to reveal that the School Corporation issued an express policy encouraging strip searches, or that it had an informal custom or pattern of tolerating such searches. Plaintiffs *offer no evidence that any previous strip searches occurred* within the school district or that any prior conduct or policy of the school corporation caused the alleged unreasonable search in this case. Therefore, plaintiffs have not established municipal liability based on the first two theories described above, which, of course, were the only two liability bases at issue in our prior ruling.

One might naturally conclude at this point that the municipal liability question has been resolved. But alas, plaintiffs backtrack to theory number three in their motion for summary judgment, now contending that the School Corporation was a final policy maker that "ratified" Brunson's search of the students after the fact, thereby playing a sufficient role in causing plaintiffs' alleged injury to impose municipal liability. Specifically, the plaintiffs claim that although the School Corporation issued Brunson a written reprimand for his search of the plaintiffs, this reprimand was tantamount to an approval of Brunson's actions. We disagree.

Initially, plaintiffs have not moved to amend their complaints to allege this ratification theory, nor did they advance this position in their prior briefing despite ample opportunity to do so. We generously read plaintiffs' complaints in allowing their municipal liability claim to survive defendants' motion for judgment on the pleadings, but expressly recognized that they failed to plead the ratification theory. Therefore, this claim is not properly before us. Nonetheless, we have fully considered plaintiffs' ratification position and find it without merit.

In *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988), the Supreme Court held that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." The Seventh Circuit considered this language in rendering its decision in *Cornfield*, 991 F.2d at 1326, remarking that "arguably, the endorse-

ment or ex post facto authorization could create liability for any unconstitutional searches." Plaintiffs, in turn, seize upon the court's suggestion in *Cornfield* and argue that the School Corporation's treatment of Brunson after the search constitutes an ex post facto authorization of his conduct. Specifically, they contend that the School Corporation should have disciplined Brunson more sternly than issuing him a written reprimand that remained in his personnel file for at least two years. Maybe so, but based upon the alleged insufficiency of the written reprimand alone, we must find as a matter of law that the School Corporation's conduct after Brunson's search fails to demonstrate the degree of authorization necessary to impose liability on the School Corporation in this case.

The September 27, 1996, letter from the School Corporation to Brunson is what it purports to be—a reprimand. While the letter documents the School Corporation's relief that a grand jury declined to indict Brunson for the search, that statement by no means suggests that the School Corporation agreed with or authorized his conduct. On the contrary, the letter notes that Brunson "did violate Board policy," which "did cause serious problems for Mr. Brunson, Lillian Emery Elementary School and the School Corporation." Higginbottom Response, Ex. 4h. The letter further acknowledged Brunson's "remorse because of his violation of the Policy and great concern about the negative effect it had had upon the school." *Id.* It is understandable that plaintiffs would have preferred that the School Corporation send Brunson a scathing letter immediately prior to dismissing him, but its election to issue a written reprimand falls considerably short of establishing that the School Corporation approved Brunson's search after the fact. In all, we find no basis on the record before us to conclude that the School Corporation's alleged policy, custom, or ex post facto authorization of Brunson's conduct visited the alleged constitutional wrong upon plaintiffs. Accordingly, we *GRANT* defendants' motion for

summary judgment on plaintiffs' Fourth Amendment claim against the School Corporation under 42 U.S.C. § 1983.

### 2. Teacher Brunson

Plaintiffs and defendants both move for summary judgment on plaintiffs' Fourth Amendment claim against Brunson in his individual capacity. Each party contends that it is entitled to judgment as a matter of law on whether the search was reasonable, although neither party sufficiently develops a factual record upon which we can assess the reasonableness of the search based on the totality of the circumstances. Therefore, we deny both parties' motions for the moment.

 We acknowledged in our prior entry that the Fourth Amendment protects school students against unreasonable searches and seizures by public school officials. *See New Jersey v. T.L.O.*, 469 U.S. 325, 333, 105 S.Ct. 733, 738, 83 L.Ed.2d 720 (1985); *Willis v. Anderson Comm. Sch. Corp.*, 158 F.3d 415, 417 (7th Cir. 1998). In *T.L.O.*, the Court determined that the legality of a search of a student should depend simply on its reasonableness, under all the circumstances. *Id.* at 341–43, 105 S.Ct. 733. Thus, school officials do not need to establish probable cause to justify the search of a student, but a search must be (1) "justified at its inception," and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* The "justified at its inception" requirement means that the search is warranted "only if the student's conduct creates a reasonable suspicion that a particular regulation or law has been violated, with the search serving to produce evidence of the violation." *Cornfield*, 991 F.2d at 1320. The second *T.L.O.* prong means that the measures adopted must be reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction. *See Bridgman v. New Trier*

*High Sch. Dist. No. 203,* 128 F.3d 1146, 1149 (7th Cir.1997).

Both parties' inattention to developing the record at summary judgment is readily apparent from an inspection of their briefing. Plaintiffs erroneously claim that defendants take "a second bite at the apple" in filing a motion for summary judgment because, according to plaintiffs, this Court treated defendants' prior motion for judgment on the pleadings as a motion for summary judgment. Higginbottom Response at 1. However, we specifically stated in our prior ruling that plaintiffs labored under the misconception that the standard of review for judgments on the pleadings is the same as that for summary judgments. Court's March 16, 1999, Entry at 7, n. 7. By claiming that we treated defendants' prior motion as one for summary judgment, plaintiffs not only have ignored our previous reminder concerning the proper standard of review, but they also have disregarded the very reason why several of their claims survived defendants' motion for judgment on the pleadings, for we expressly examined the sufficiency, not the merits, of their complaints in determining whether plaintiffs stated a claim upon which relief could be granted. Perhaps plaintiffs' mistaken approach to their obligations at summary judgment explains why they have not developed the record since our prior ruling.

Defendants' briefing likewise demonstrates both their inattention to our prior ruling and their insufficient cultivation of the record. They cite no evidence or facts to support their claim that Brunson's search was reasonable as a matter of law. Rather, they rest on an argument that we expressly rejected in their motion for judgment on the pleadings. *See* Court's March 16, 1999, Entry at 16–17 (acknowledging that while school officials stand *in loco parentis* regarding their students, that doctrine does not suspend Fourth Amendment protections for elementary students).

In fact, defendants import block segments of their motion for judgment on the pleadings into their motion for summary judgment, completely ignoring the fact that we have both discussed and dismissed some claims that they now move us to dismiss a second time. They also reiterate verbatim other arguments that we found unsupported by Indiana law. *See* Defs.' Mot. Summ. J. at 8 (again contending in error that the impact rule precludes plaintiffs' claim for negligent infliction of emotional distress).

We are troubled that both parties now request us to make an intensely factual determination about the reasonableness of Brunson's search without affording us "all the circumstances" under which it occurred. *See T.L.O.,* 469 U.S. at 341, 105 S.Ct. 733; *Cornfield,* 991 F.2d at 1321 (finding that the reasonableness assessment depends on a "careful scrutiny of the circumstances surrounding the search"). The general allegations in plaintiffs' complaints, of course, sufficed to put defendants on notice of the claims advanced, but without substantiation in the form of exhibits, depositions, affidavits, or other admissible trial evidence, they prove incomplete in establishing record evidence upon which we may rely on summary judgment. It is pointless for us to attempt to view the record in a light most favorable to either party when one scarcely exists. What we are able to glean from the parties' cursory statements of undisputed facts[7] is that Brunson searched the plaintiffs for the missing $38.00, requiring that they strip down to their underwear. While we lack a complete picture of the facts enveloping Brunson's decision to conduct such a search in the absence of some pressing security concern, it is apparent that plaintiffs may not have much difficulty establishing the search's unreasonableness at trial. Until then, we find that neither party is entitled to judgment as a matter of law on the record before us, and accordingly, we *DENY* both parties' motions for

---

7. In future litigation in this federal district, the parties should provide the court with all the excerpts of the evidence they designate in support of their factual claims as required by local rules.

summary judgment on plaintiffs' Fourth Amendment claims against Brunson under 42 U.S.C. § 1983.

### B. Fourteenth Amendment

■ Plaintiffs also claim that Brunson violated their Fourteenth Amendment rights by basing his decision to search them on their socio-economic status. They contend that the "policy, procedures, and practices of the Defendants relating to this strip search were selectively applied only to low income students." Higginbottom A. Compl. ¶ 5d; see Cousin and Deluca Compl. ¶ 33; Farnworth Compl. ¶ 26. Defendants rejoin that no evidence suggests that Brunson searched plaintiffs based upon socio-economic status. We agree with defendants in this regard.

In order to establish liability under § 1983 for a violation of equal protection, the plaintiffs must show that the defendants acted with a nefarious purpose and discriminated against them based on their membership in a definable class. See Indianapolis Minority Contractors Assoc. v. Wiley, 187 F.3d 743, 752 (7th Cir.1999) (quoting Nabozny v. Podlesny, 92 F.3d 446, 453 (7th Cir.1996)). In Wiley, the Seventh Circuit summarized its prior holdings in Nabozny and Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir.1982):

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

Id. (citations and internal quotation marks omitted). "A showing that the defendants were negligent will not suffice. [Plaintiffs] must show that the defendants acted either intentionally or with deliberate indif-

ference." Nabozny, 92 F.3d at 454 (citations omitted).

Plaintiffs contend that Brunson must have acted with discriminatory and nefarious purpose towards plaintiffs because most of the students at Lillian Elementary were from low-income families receiving federal assistance. See Higginbottom Response at 7; Brunson Dep. at 37–38. Even assuming that Brunson knew plaintiffs' socio-economic status and that plaintiffs were from low-income families (neither of these propositions having been clearly drawn from the record), plaintiffs fail to demonstrate that Brunson acted with any discriminatory animus in searching them. Plaintiffs offer nothing to suggest that Brunson had a history of treating children of modest means any worse than affluent students, that he harbored any ill-will towards lower-income children, or that he generally treated lower-income children differently than anyone else. We have no facts before us suggesting that Brunson singled out the plaintiffs from the rest of the class because of their families' income level or invidiously classified them based on that factor. Simply put, plaintiffs' Fourteenth Amendment claim suffers from a palpable absence of proof. Accordingly, we GRANT defendants' motion for summary judgment on plaintiffs' Fourteenth Amendment claims against Brunson in both his individual and official capacities.

### III. Plaintiffs' Remaining State Law Claims

#### A. Battery

■ Plaintiffs originally alleged in their complaints that Brunson committed the tort of battery while conducting the alleged unreasonable search. Under Indiana law, the tort of battery is defined as "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent...." West v. LTV Steel Co., 839 F.Supp. 559, 562 (N.D.Ind.1993) (quoting Fields v. Cum-

*mins Employees Fed. Credit Union,* 540 N.E.2d 631, 640 (Ind.Ct.App.1989)). "It has long been established in Indiana that 'any touching, however slight, may constitute assault and battery.'" *Oliver v. McClung,* 919 F.Supp. 1206, 1220 (*quoting Cohen v. Peoples,* 140 Ind.App. 353, 220 N.E.2d 665 (1966)).

 Plaintiffs subsequently have acknowledged that Brunson never touched plaintiffs during the course of the search, and, in any event, no evidence indicates that he did so. *See* Higginbottom Dep. at 7–8; Farnworth Response at 5. Accordingly, we *GRANT* defendants' motion for summary judgment on plaintiffs' battery claim.

### B. Intentional Infliction of Emotional Distress

 Plaintiffs allege a claim for intentional infliction of emotional distress based on Brunson's searches and treatment of the four boys. Plaintiffs fail to adduce evidence that Brunson intended to inflict emotional distress upon them, and their claim grinds to an abrupt halt as a result.

As explained in *Oliver,* the Indiana Supreme Court defined the tort of intentional infliction of emotional distress as follows: "'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . .' RESTATEMENT (SECOND) OF TORTS § 46 (1965). It is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress." *Id.* (*quoting Cullison,* 570 N.E.2d at 31).

We stated in our prior entry that "plaintiffs face a difficult task in ultimately proving the merits of the claim that Brunson actually intended to inflict emotional distress on plaintiffs," but we nonetheless found the allegations in plaintiffs' complaints sufficient to withstand a motion for judgment on the pleadings. Court's March 16, 1999, Entry at 24. In the shadow of our warning about the gravity of their burden on summary judgment, plain-

tiffs do not offer any evidentiary support for the assertion that Brunson actually intended to inflict emotional damage upon them. *See Oliver,* 919 F.Supp. at 1206 (finding that although a strip search of seventh-grade girls for allegedly stealing $4.50 was unreasonable, plaintiffs failed to present evidence that defendants intended to harm them emotionally); *Cullison v. Medley,* 570 N.E.2d at 31 (upholding summary judgment in favor of defendant on plaintiff's claim of intentional infliction of emotional harm even though defendant trespassed onto plaintiff's property, yelled angrily at him, and threatened him with a gun knowing defendant's fear of firearms).

Instead, plaintiffs contend, without any analysis or citation to new authority, that this Court "has rejected [ ] the Defendants' contention that they are entitled to summary judgment on the issue of negligent and intentional infliction of emotional distress." Higginbottom Response at 7–8; *see* Farnworth Response a 6–7. We did nothing of the sort in our ruling on defendants' motion for judgment on the pleadings; rather, we expressed our full appreciation for the magnitude of the task plaintiffs faced in adducing evidence of Brunson's alleged intent to harm them emotionally. Because plaintiffs have produced no evidence to establish Brunson's intent to inflict emotional distress upon them, we *GRANT* defendants' motion for summary judgment on that claim.

### C. Negligent Infliction of Emotional Distress

Plaintiffs assert a claim for negligent infliction of emotional distress against Brunson, which they predicate on Brunson's alleged violation of their Fourth Amendments rights. Defendants respond by again contending that the "impact rule" prevents plaintiffs from recovering on that claim if they have not sustained a physical injury, an argument we expressly rejected in our prior entry. We find that plaintiffs' claim withstands defendants' summary judgment motion, as plaintiffs' § 1983 ac-

tion based on the Fourth Amendment provides a valid predicate for a claim of negligent infliction of emotional distress.

 Unlike a claim for intentional infliction of emotional distress, a claim for negligent infliction of emotional distress does not require the movant to prove that the defendant acted with an actual intent to harm one emotionally. Federal courts interpreting Indiana law have recognized that a plaintiff may recover for negligent infliction of emotional distress in the absence of physical injury if "(1) there is a tort which invades a legal right of the plaintiff; (2) which is likely to provoke an emotional disturbance or trauma; and (3) the defendant's conduct is willful, callous, or malicious." *Oliver*, 919 F.Supp. at 1221 (*quoting Moffett v. Gene B. Glick Co.*, 621 F.Supp. 244 (N.D.Ind.1985)); *Cullison v. Medley*, 570 N.E.2d 27, 29–30 (Ind.1991) (permitting the possibility of recovery for negligent infliction of emotional distress in the absence of physical injury if the tort, in that case a trespass, is one which would provoke a foreseeable emotional disturbance or trauma); *Shuamber v. Henderson*, 579 N.E.2d 452, 455 (Ind. 1991).

 We have dismissed plaintiffs' battery claim, which could have provided one basis to sustain their negligent infliction of emotional distress allegation. However, plaintiffs' also claim that Brunson committed a constitutional tort under § 1983 when he allegedly strip-searched plaintiffs in violation of their Fourth Amendment rights. A constitutional tort based on an alleged unreasonable strip search of sixth-graders certainly is the type of conduct that reasonably could provoke emotional disturbance or trauma, and perhaps did in this case. We also conclude that a reasonable jury could find that Brunson acted willfully or callously in so conducting that search. Since we have denied both parties' motions for summary judgment on plaintiffs' Fourth Amendment claim under

§ 1983, that cause of action remains as the underlying tort that could sustain plaintiffs' claim for negligent infliction of emotional distress.[8] Accordingly, we *DENY* defendants' motion for summary judgment as to that claim.

### Conclusion

For the reasons discussed, we *GRANT* defendants' motion for summary judgment and *DENY* plaintiffs' motion for summary judgment as to plaintiffs' contract-related claims based on the student guide. We *GRANT* defendants' motion for summary judgment as to plaintiffs' § 1983 claims, based on the Fourth and Fourteenth Amendments, against the School Corporation. Also, we *GRANT* defendants' motion with respect to plaintiffs' § 1983 claim, based on the Fourteenth Amendment, against Brunson in his individual capacity. However, we *DENY* both parties' motions for summary judgment as to plaintiffs' § 1983 claim, based on the Fourth Amendment, against Brunson in his individual capacity. Finally, we *GRANT* defendants' motion for summary judgment on plaintiffs' state law claims of battery and intentional infliction of emotional distress, but we *DENY* defendants' motion with respect to plaintiffs' claim of negligent infliction of emotional distress. Neither party has moved for summary judgment on plaintiffs' claim for invasion of privacy/bodily integrity. A trial on the merits shall proceed forthwith on plaintiffs' three remaining claims, which include the § 1983 action against Brunson based on the Fourth Amendment, the negligent infliction of emotional distress claim, and the putative claim for invasion of privacy/bodily integrity.

8. The parties have yet to address plaintiffs' putative invasion of privacy/bodily integrity claim, so we express no opinion on the inter-

action between that allegation and the claim just discussed.