# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3356
_____

John J. Smith

*Plaintiff - Appellant*

v.

Jeremy Andrews, Warden, EARU, ADC; James Dycus, Warden, EARU, ADC; Emmer Branch, Deputy Warden, EARU, ADC; Tiffany Munn, Captain, EARU, ADC; Dexter Payne, Arkansas Department of Correction; Leroy Golatt, Lieutenant, EARU, ADC; Paul Harris, Sergeant, EARU, ADC; Williams, Corporal, EARU, ADC; Asa Hutchison, Governor, State of Arkansas; Keith Turner, Inmate ADC #147564

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Delta
_____

Submitted: February 16, 2023
Filed: July 26, 2023
_____

Before SMITH, Chief Judge, STRAS and KOBES, Circuit Judges.
_____

SMITH, Chief Judge.

John J. Smith appeals the dismissal of his claims against various Arkansas Department of Corrections staff members for damages stemming from injuries that

he received when he was beaten by another inmate. Smith alleges that the defendants failed to protect him from the beating. The district court dismissed Smith's claim on summary judgment, finding that he had failed to exhaust his administrative remedies even though he remained hospitalized from his injuries until the time for filing expired. We are asked to decide whether the district court erred in dismissing Smith's complaint for failure to exhaust administrative remedies. Upon review, we conclude that the district court's grant of summary judgment was premature. We reverse and remand for further proceedings.

## I. *Background*

Smith, an Arkansas prison inmate, alleged that he suffered a brutal assault at the hands of another inmate with a sock containing a metal lock. Smith's injuries required emergency services. He was airlifted to the nearest trauma-capable hospital and remained there, initially comatose, for approximately three weeks. Afterward, he was returned to the prison's ICU for 11 months before reentering the general prison population. Smith alleges that the brain trauma he suffered from the attack was so severe that he had to relearn basic functions like walking, talking, and writing. Approximately four months after his return to the general prison population, Smith filed a grievance with the prison about the incident. Smith alleges that the prison and its employees are responsible for the extent of his injuries—that legally mandated care and supervision would have prevented or at least mitigated the injuries he suffered in the attack.

Smith's grievance, subsequent appeals, and further grievances were all denied as untimely. The prison's rules require that grievances be filed within 15 days of the underlying incident. R. Doc. 33, at 2. Administrative remedies are forfeited if an inmate does not do so. *Id.* at 4.

Denied relief in the prison's grievance process, Smith turned to federal court and filed suit pro se. Smith's claims are subject to the Prison Litigation Reform Act

(PLRA), which requires that inmates exhaust available administrative remedies before filing suit in federal court. *See* 42 U.S.C. § 1997e. The defendants moved for summary judgment, arguing that Smith had failed to exhaust his administrative remedies by failing to timely file.

In considering whether to grant summary judgment, the district court applied the Supreme Court's decision in *Ross v. Blake*, 578 U.S. 632 (2016). The district court concluded that

> the United States Supreme Court narrowly defined administrative remedies as being unavailable when: (1) the prison's grievance process operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) the administrative scheme is so opaque that it becomes, practically speaking, incapable of use because some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it; or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Smith v. Andrews*, No. 2:20-cv-00009-KGB-JJV, 2021 WL 4501864, at *4 (E.D. Ark. Jan. 6, 2021) (internal quotation marks omitted), *findings and recommendation adopted*, 2021 WL 4502132 (E.D. Ark. Sept. 30, 2021). The district court analyzed those three kinds of unavailability and determined that it was unclear if any applied to Smith's situation. Smith argued that his medical incapacity—although not among those three categories—made the prison's administrative remedies unavailable to him. The district court held that it did "not need to decide whether mental and physical infirmities made administrative remedies 'unavailable' to [Smith] for two reasons." *Id.* at *5. First, it found that the untimely-filed grievances were insufficiently specific as to the names of the defendants and the claims being pursued and that one grievance was not properly appealed. *Id.* Second, it found that the first filed grievance was more than four months after Smith's return to the general prison

-3-

population. *Id.* The district court declined to find whether administrative remedies were unavailable to Smith and instead concluded that these two procedural defects indicated a failure on his part to exhaust. *Id.* The district court concluded that the PLRA's exhaustion requirement thus barred Smith's claim and granted summary judgment in favor of the defendant. *Id.* Smith appeals from the district court's grant of summary judgment. After filing his appeal and briefing it pro se, Smith was appointed counsel and new briefs were filed.

## II. *Discussion*

We review the district court's grant of summary judgment de novo, *Spirtas Co. v. Nautilus Ins. Co.*, 715 F.3d 667, 670 (8th Cir. 2013), taking care to construe pro se filings liberally, "however inartfully pleaded," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In *Ross*, the Supreme Court ended a judge-made exception (the "special circumstances" exception) to the PLRA's exhaustion requirement. *Ross*, 578 U.S. at 638–39. In doing so, the Court emphasized the PLRA's mandatory language. *Id.* at 638 ("As we have often observed, that language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006))). However, the Court also explained that the PLRA contains "its own, textual exception": "[A]n inmate is required to exhaust those, but only those, grievance procedures that are [available, i.e.,] 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). But "[t]o state that standard, of course, is just to begin; courts in this and

-4-

other cases must apply it to the real-world workings of prison grievance systems." *Id.* The Supreme Court then noted "*as relevant here* three kinds of circumstances in which an administrative remedy" may be unavailable. *Id.* at 643 (emphasis added). Those situations are (1) when the procedure "operates as a simple dead end"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) when prison administrators deliberately thwart prisoner attempts to use the process. *Id.* at 643–44.

The district court legally erred in declining to decide whether administrative remedies were "unavailable" to Smith. As the Supreme Court stressed in *Ross*, the PLRA "contains its own, textual exception to mandatory exhaustion." *Id.* at 642. "Under [the PLRA], the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies. An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* (second alteration in original). As such, the PLRA provides a threshold question that the district court *must* answer before proceeding: What remedies were *available* to Smith? Smith must only exhaust those and no more. If the prison's administrative remedies were unavailable to him, then any procedural defects are immaterial. Under the PLRA, only a plaintiff's failure to exhaust an *available* remedy can bar his claim. Because the district court declined to decide whether the prison's grievance procedure was unavailable to Smith, we must reverse the grant of summary judgment and remand the case for further proceedings.[1]

On remand, the district court must determine whether the prison's administrative remedies were "available" to Smith. 42 U.S.C. § 1997e(a). As the

---

[1]Smith's appeal presents the legal question of when administrative remedies are unavailable to an inmate due to a medical condition and requests that we adopt a standard, find that Smith meets it, reverse the grant of summary judgment, and remand. Due to the fact-intensive nature of the inquiry, we decline to find that administrative remedies were unavailable to Smith and remand for the district court to determine that question in the first instance.

Supreme Court has explained, "available" means "capable of use to obtain some relief for the action complained of." *Ross*, 578 U.S. at 642 (internal quotation marks omitted). It follows that administrative remedies are "unavailable" to an inmate under the PLRA when (1) the inmate was unable to file a timely grievance due to physical or mental incapacity; and (2) the administrative system's rules do not accommodate the condition by allowing a late filing. *See Rucker v. Giffen*, 997 F.3d 88, 94 (2d Cir. 2021) (concluding that "grievance procedures were 'incapable of use'" because the plaintiff was hospitalized "for over a month," but "any failure to file a grievance within five days . . . would render it untimely" (quoting *Ross*, 578 U.S. at 643)); *see also Smallwood v. Williams*, 59 F.4th 306, 314 (7th Cir. 2023) (noting that administrative remedies may be unavailable "to an inmate incapacitated by a stroke"); *Ross*, 578 U.S. at 648 (contemplating whether "procedures [were] knowable by an ordinary prisoner in [the plaintiff's] situation").[2]

## III. *Conclusion*

Accordingly, the judgment of the district court is reversed, the grant of summary judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

_____

_____

[2]We note and disagree with *Mason v. Corizon, Inc.*, No. 6:13-cv-06110-SOH-MEF, 2015 WL 10434528 (W.D. Ark. Dec. 17, 2015), *report and recommendations adopted*, No. 6:13-cv-6110, 2016 WL 868835 (W.D. Ark. Mar. 7, 2016). The district court in *Mason* found that the plaintiff was entitled to an "exhaustion exception" on the basis of his physical incapacity. *Id.* at *7. In order to provide this exception, the court determined when the plaintiff was physically capable of filing a grievance, and checked his timeliness from that date. *Id.* In our view, *Mason* crafted a judicial remedy for a policy that provided no recourse for an inmate who failed to file and in doing so deviated from the text of both the PLRA and the prison's grievance procedure.